## In re GRAND JURY.

(Court of General Sessions, New York County. March 14, 1912.)

CRIMINAL LAW (§ 42*)—WITNESSES—PRIVILEGE—STATUTES.

Under Penal Law, § 584, as added by Laws 1910, c. 395, providing that no person shall be excused from attending and testifying before any court, magistrate, or referee on any investigation, proceeding, or trial for violation of the law against conspiracy, on the ground that the testimony required of him may tend to convict him of a crime; but no person shall be prosecuted or subjected to any penalty for or on account of any transaction, matter, or thing concerning which he may so testify, and no testimony so given or produced shall be received against him on any criminal investigation, proceeding, or trial, one cannot testify before a grand jury on an investigation of a conspiracy, without becoming immune from prosecution and punishment for the conspiracy, even though he stipulate to the contrary.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 45–48; Dec. Dig. § 42.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Advice to grand jury.

CRAIN, J. Mr. Foreman and Gentlemen of the Grand Jury: What is about to be said to you is not a charge by the court. It is advice given to you by a judge of the court responsive to your request for advice. Grand jurors are under legal obligation to follow and apply the law stated in a charge. Grand jurors are under no legal obligation to either follow or apply advice given to them at their request by a judge of the court.

The advice so sought by you is upon a specific and stated question, namely, whether it is legally possible for certain persons named to appear and testify before you in a pending investigation without such persons thereby becoming by virtue of the provisions of section 584 of the Penal Law, as added by Laws 1910, c. 395, immune from prosecution and nonpunishable for the crime of conspiracy. The advice about to be given is responsive to such request. It is not advice upon any other point.

You have not asked advice on the general question as to the propriety of your listening to testimony from such persons considered apart from the consequences of your so doing to the people of the state on the one hand and to such persons on the other hand, resulting from the operation of the provisions of the section named. It follows that the advice now given, apart from the circumstances that it construes the law, is not an intimation of opinion as to what your duty may be respecting the granting of such permission to the persons in question. The purpose of the last statement is to avoid the possibility of any one or more of your number mistakingly saying: "The judge has given a certain interpretation to section 584 of the Penal Law and because of such interpretation we must deny the request made." On the contrary, even though the advice does not commend itself to your judgment as correct, you may nevertheless consider it neither wise nor your duty to grant the request.

Respecting your general duty, you were charged at the beginning of the term in the language of sections 256, 257, and 258 of the Code of Criminal Procedure that you could receive none but legal evidence; that you were not bound to hear evidence submitted for the defendant; that it was your duty to weigh all the evidence submitted to you; that, if you had reason to believe that there was other evidence within your reach which would explain away a charge, you should order it to be produced; and that you should indict if all the evidence before you, taken together, was such as in your judgment would if unexplained or uncontradicted warrant a conviction by a trial jury. The law with respect to the tests to which you must bring the evidence which may finally be before you in determining whether to find or not to find indictments is stated in the case of People v. Acritelli, 57 Misc. Rep. 574, 110 N. Y. Supp. 430, and that case in such respects will be your guide.

Applying the tests there laid down declarative of the above statutory rules, it follows that if after all the evidence which the people may have to submit in the pending investigation is before you a prima facie case in your judgment is not made out occasion would not exist

for granting the request of the persons referred to in your communication. Likewise, if upon all of the evidence before you a prima facie case against such persons is made out warranting within these statutory provisions the finding by you of indictments, no occasion except in the contingency to be mentioned would present itself for granting the request of the persons named. The contingency alone in which as a matter of wisdom and propriety such a request if otherwise proper could rightly be granted would be the presence before you of testimony giving rise to conflicting inferences, within your judgment, probably susceptible of explanation within the language of section 257 of the Code of Criminal Procedure. The reason underlying the foregoing rules is that you are not triers of an issue of fact except so far as it is your function to determine whether within the rules of law certain persons should or should not be put upon trial.

To repeat, the rules of law so stated to you in the court's charge at the beginning of the term you are obligated to follow. What was then delivered to you was a charge. What is now said to you is advice, and you are again told that the advice now about to be given you are not obligated to follow, and, moreover, that you are not expected to follow it unless it commends itself to your judgment.

The argument in support of the view that you should be advised in the negative, namely, to the effect that it is not legally possible for the persons referred to to appear and testify before you in the pending investigation without such persons becoming by virtue of the provisions of section 584 of the Penal Law immune from prosecution and nonpunishable for the crime of conspiracy is stated for your guidance and information as follows:

The statute in question requires all persons to testify, and prohibits the assertion of the constitutional privilege of silence and operates per se as a compulsion. This compulsion is not confined to cases where official action is taken pursuant to law to secure the attendance of a person as a witness, as, for example, by the issuance and service of a subpœna. A person coming before the grand jury and being sworn as a witness upon an investigation of a charge of conspiracy is under a legal compulsion to testify. This compulsion does not spring from any power existing inherently in the tribunal, but, contrariwise, from the mandate of the statute. Thus the statute in itself operates as a compelling power. The grand jury in administering the oath, interrogating the witness, or in taking his testimony is a ministerial agent giving expression to the fiat of the people as contained in the enactment of the Legislature.

The situation of such a person is that of one required to speak, and this independent of the circumstance that his desires run parallel with the requirement of the statute, because, regardless of what his actual volition may be, he is bereft of the power of choice. He is precluded from pleading his constitutional privilege of silence. Its assertion, therefore, is useless. If asserted, it would be overruled, for as to him it does not exist, and the tribunal would be constrained to deny him the right of refusal. His situation is not controlled by either his will as an individual or the will of the tribunal. It is settled by law. He

occupies an exact legal status. It follows that this statute which says that he shall not be excused from testifying or asserting his constitutional privilege of silence operates immediately and directly upon him and takes from him the power to refuse to testify. Where a statute takes away by its terms the power of a witness to refuse to testify, it follows that it itself constitutes a compulsion to testify, and renders the giving of the testimony nonvoluntary within the meaning of the law.

Volition in the popular sense may imply that power of seeming choice apparently residing in an individual anticipatory to the official exercise upon him of a legal restraint. In the legal sense, however, there is an absence of volition where given action is legally compellable regardless of the will or desire of the person affected. Thus, a person required to pay a tax is under legal constraint, although himself desiring to pay it. The constraint consists in the circumstance that, were his desire the opposite, he would nevertheless have to pay it. For like reason a person desiring to institute a test case who voluntarily commits an illegal act calls an officer who, upon request, arrests him, is under constraint to submit his rights to the forum he has invoked. The constraint thus placed upon him, although voluntary in fact, is involuntary in law. So here—suppose that after appearing and being sworn such a person ceased to wish to testify— can he conform his conduct to his changed wish? He is then under the general obligation resting upon all competent persons to give evidence and unrelieved by the constitutional provision giving him in a contingency named the right to claim the privilege of silence.

In the true sense of the term and in contemplation of law there can be no voluntary action where there does not exist an untrammeled right of choice to act or not to act, at the uncontrolled will of the individual. However voluntary he may consider his action to be, it is not voluntary within the meaning of the law where some legal power takes away the right of choice and directs or controls the action. The witness speaks under lawful duress by virtue of the oath and the direction of the statute.

This statute is constitutional. Yet it could not be unless full immunity from prosecution were granted concurrently with the compulsion. It therefore makes the moment of compulsion the moment of immunity. When compelled and as compelled the person compelled becomes immune. Immunity springs into being because of the compulsion. Its birth is coeval with the compelling power, and this is the language and intendment of the statute.

Waiver implies that one person making it has an option, and that he is so circumstanced that he may forego a privilege, and where there is no statute compelling the giving of testimony coupled with the grant of immunity the general constitutional privilege, which is only a privilege of silence, may be waived; but where, as in this case, a statute has taken away this privilege of silence, there is nothing upon which a waiver can operate.

Here no document, however formal, no statement, however precise, no assertion of nonintention to avail of the provisions of the law, in

short, no so-called waiver can change the status of the individual or operate to override the statute. Just as there is no choice to be made, there is no privilege to be waived. Immunity from prosecution is not a privilege conferred. It is a status created by operation of law not subject to change by the individual.

This argument in support of the view that you should be advised that should the persons in question appear or testify before you in your pending inquiry they would become immune, regardless of the conditions under which they might appear is sustained by the reasoning in Queen v. Hammond (29 Ontario Reports, p. 211), decided by the Divisional Court of Ontario in February, 1898, and which passed upon the effect of an analogous Canadian statute.

The argument in support of the view that the answer to be made to your question should be in the affirmative is stated for your information and guidance as follows:

It is: That section 584 of the Penal Law, reduced to simpler language, means that when a person is required to testify before a court, etc., upon any investigation, etc., for a violation of the article relating to the crime of conspiracy he shall not be excused from so testifying, etc., for the reason that to do so might tend to convict him of a crime, etc., but that such person so testifying cannot be prosecuted or subjected to any penalty for any transaction concerning which he may so testify, and that testimony so given by him shall not be received against him upon any criminal investigation, etc.

That at the threshold it must be conceded that this section is an affirmative enactment among other things, for the nonpunishability of a therein defined class. That it renders all persons answering to a certain description immune from prosecution and punishment with respect to certain matters. That persons answering to such description cannot by any act or omission which falls short of taking them out of such immune class volitionally nullify such immunity. That this is so because they cannot override the law creating the immunity. That if as a consequence those who wish to appear and testify before you would by so appearing or by so appearing and testifying come within the class so described as immune they will be powerless to waive such statutory immunity. That if, on the other hand, such persons by so appearing or so appearing and testifying would not come within such class, then, so far as such section is concerned, there is no immunity for them to waive. That it therefore becomes necessary to determine in the first instance what class of persons are so rendered immune from prosecution and punishment by such section. That the answer must be found primarily from a perusal and analysis of the section. That the key to the answer is the word "so" as used before the word "testify" in the last clause of the section. That the question is what is the force of the word "so," and in this connection whether "so" as used before "testify" in the section is limited exclusively to persons testifying "before" the authorities mentioned in the section "upon" some one of the occasions mentioned, or whether it is also subject to a further limitation evidenced in part by the use in the section of the words "excused from" and "required," to wit, the limita-

tion that the testimony upon the giving of which immunity shall follow to the giver must be in a popular sense compulsorily as distinguished from voluntarily given. That if the first part of the section—that is to say, all preceding the word "but"—be considered in the first instance apart from the clause beginning with the word "but," it will be seen that the first part of the section is enacted to create an obligation, to wit, in part an obligation to testify before certain tribunals upon certain occasions upon certain matters. That if then the latter part of the section is examined, namely, the clause conferring immunity, it will be seen to be immunity from what otherwise would be the punitive consequences to those discharging the obligation consequent upon its discharge. That, if this first part of the section be considered apart from the clause beginning with the word "but," it will be seen to enact that no person shall be "excused from"; that is to say, freed from the impending obligation or duty of doing certain things before certain tribunals upon certain occasions on a certain alleged ground of excuse. That the ground of excuse stated imports that the thing from the doing of which excuse is sought is a thing "required"; that is to say, demanded, insisted upon; claimed as by right of authority; exacted. That to this point the section is treating of persons who are required to do a thing named, and who cannot avail themselves of a ground or reason named as an excuse for not complying with the requirement. That then follows the clause beginning with the word "but," which is used here as a connective of clauses of a sentence more or less exceptive or adversative and for which word in this connection either the words "nevertheless," "however," or "still" might be substituted without change of meaning. That its force is to refer the second clause back to the preceding portions for full interpretation, and that this reference back is re-enforced by the use of the word "so" before "testify," and of this same word "so" before "given." That this word as so used in the second clause of the section becomes a word of reference, and the reference is to testification under circumstances referred to in the preceding portion of the section and to testimony given under such circumstances, and the reference thus made becomes a limitation. That that is to say, those who "so" testify are those who, as enacted in the preceding portions of the section, are required and not excused from testifying, and that it is such and such only that are made immune from prosecution and punishment by the second clause of the section. That if, therefore, the persons named in your request for advice were forced to appear before you or testimony was exacted from them in your pending investigation, apart from any inherent compulsion in the statute, they would be comprehended within the class made immune by the statute; but if, on the other hand, their appearance is at their own initiative and request, and their testimony likewise so, they would not be comprehended within the class so rendered immune.

That section 584 of the Penal Law was designed to accomplish a twofold purpose, namely, to place testimony not otherwise procurable within the compulsory reach of the public authorities in connection with the prosecution of persons for the crime of conspiracy, and to

shield those giving such testimony from the punitive consequences liable to otherwise follow from self-accusation.

That it became a law in June, 1910. That prior to and but for its passage a person having violated a provision of the article of the Penal Law relating to the crime of conspiracy could have declined to give self-inculpatory evidence because of the constitutional provision that no person shall in any criminal case be compelled to be a witness against himself. That evidence, however, that was self-inculpatory might also where the crime under investigation was criminal conspiracy be evidence inculpating others, and such evidence might therefore, if available, be of use in the prosecution of such others. That, as long as such evidence could be withheld, its procurement would depend wholly upon the willingness to give it of the party from whom it was sought, and such willingness would be unlikely if such evidence would establish the commission by the one giving it of a punishable crime. That the purpose of this law, therefore, was to place such evidence within reach of the prosecution while giving to the person imparting it all substantial benefits conferred upon him by his otherwise existent constitutional right of silence. That the construction given to the statute to the effect that you can lawfully allow the persons in question to appear and testify before you without thereby rendering them immune permits the section to accomplish the purpose for which it was enacted without an undue enlargement of its scope; and that, lastly, if this section were construed to apply to those voluntarily becoming witnesses as well as to those compulsorily becoming such it might be possible for a defendant on trial for the crime of conspiracy to take the stand pursuant to the right conferred upon him by section 393 of the Code of Criminal Procedure and thereupon, if upon cross-examination self-inculpating testimony were elicited from him, to claim immunity from further prosecution or punishment. That in such a case the prosecution would of necessity have the alternatives presented of either not exercising the right of cross-examination or of making such cross-examination noneffective or of eliciting by it from the defendant self-inculpatory testimony with the result of thereby conferring upon him immunity. That such an interpretation resulting in such a consequence would be against public policy, and therefore one not probably within the intent of the Legislature enacting the statute, and that for this reason it should not be adopted.

Many cases have been studied. No New York case has been found decisive of the point involved, namely, whether one can by his own initiative and so-called volition—that is to say, without demand by any authorized person or tribunal—successfully contend that it is within his power to appear and testify without joining the class rendered immune by law.

Perhaps the best general discussion pro and con is found in Queen v. Hammond already referred to, and in State v. Murphy, 128 Wis. 201, 107 N. W. 470. In the Acritelli Case, 57 Misc. Rep. 574, 582, 110 N. Y. Supp. 430, heretofore referred to and decided by the judge advising you the point upon which you seek advice was not in

the mind of the court, the statute dissimilar and the remark respecting such statute unnecessary to the decision.

So far as the argument in favor of an affirmative answer to your question proceeds upon an analysis of section 584 of the Penal Law, it may be said to be sustained by the case of Regina v. Williams, 28 O. R. 583, analyzing a similar Canadian law, but that case was overruled in Queen v. Hammond, heretofore referred to. In the Hammond Case a similar argument deduced from a similar analysis of a similar statute is commented upon and held untenable.

Persons situated as those referred to in your communication cannot stipulate away the provisions of the statute. Whatever may be true in certain classes of civil cases where purely private rights are involved, with respect to criminal statutes no man can stipulate the law. The law is founded on the fiat of sovereign power expressed through the medium of its legislative assemblies and on that fiat alone. If the individual could consent that the rule by which he should be governed in a particular case or under particular circumstances should be different from that to which the law-making power has given its sanction and which it has decreed shall apply to all, there would be no law; there would be a condition of anarchy wherein each individual could make unto himself regulations to guide and control his conduct and his relations to the state.

The provisions of this statute relative to the giving of testimony are mandatory. It compels all persons to testify in any investigation of a charge of conspiracy and precludes them from asserting the constitutional privilege of silence. It leaves nothing to the will of the individual. He cannot refuse to testify if he would. It is equally mandatory in its provisions of immunity. It declares that "no person shall be prosecuted," etc., for or on account of any transaction, matter or thing concerning which he may "so testify"—that is, concerning which he testifies pursuant to the command and requirement of the statute, for that is what the words "so testify" may be construed to mean. They cannot relate to testimony given under an overruled claim or assertion of privilege by the individual, for there is no privilege to assert, and hence none to be overruled; nor can they relate to testimony given under a waiver of privilege, for there is no privilege to waive. The statute itself has taken away the privilege of silence, and hence ex proprio vigore commands the giving of testimony by all persons. It is testimony "so" given that cannot be subsequently used, and it is the persons "so" testifying—that is, by command of the statute, which applies equally to all—who receive immunity from prosecution, for, in order that the statute shall not come in conflict with the fundamental law, it is necessary that it grant immunity in exchange for the testimony given by its command and requirement. When a person testifies in a proceeding of this nature, he does so, in a legal sense, under the compulsion of the statute and the oath, and therefore he immediately and without further action on his part becomes immune from prosecution for any transaction, matter, or thing concerning which he "so" testifies. How can he stipulate not to take that which by operation of law subject to no control by him

he has already received? He is powerless to prevent its reception He cannot divest himself of it if he would.

So far as the argument in favor of an affirmative answer to your question proceeds upon the supposed legislative intent and the inconveniences attendant upon a contrary construction, it is suggested: That, so far as the effect of the operation of section 584 of the Penal Law considered in its relation to results which might follow the taking of the witness chair by a defendant on the trial of a conspiracy case is concerned, the compulsion of the statute operates only on all persons who are legally and generally competent to become witnesses; that is upon those under no known or ascertainable legal disqualification which would prevent them from being witnesses in a general sense. That a defendant in a criminal case is not a competent witness in the general sense of the term. That he cannot be called as a witness. That he cannot be compelled to give testimony. That he is not a compellable witness. That by special statutory enactment he is endowed with a limited and special competency, namely, he may become a witness in his own behalf. That is the extent of his competency. That this statute has reference only to those witnesses who possess general qualifications of competency to give testimony and that the case of a defendant charged with conspiracy becoming a witness in his own behalf on his trial may therefore not come within the purview of the statute. Whether this last contention be sound or unsound, you are advised that in the opinion of the judge advising you there is undeniable weight to the argument that the construction placed upon the statute by the advice as given may result in inconveniences and therefore lead to its amendment.

While it is wholly impossible to enumerate, should you determine to permit the persons named to attend and testify, the things to be avoided in connection with their attendance and examination, you are advised that, under either construction of the statute no subpœna should be issued requiring their attendance or the production by them of any document or documents, and that, if the latter construction of the statute is the one which you adopt, it is expedient that the persons named should not be sworn until the circumstances attending their appearance, coupled with an expression of wish upon their part to have the oath administered to them, is noted upon the record.

Finally, it may be said that, while arguments conceivably more persuasive one way or the other than those now presented may suggest themselves to you, effort has been made to state both contentions with reasonable adequacy. No consideration pro or con brought to the attention of the judge advising you has been withheld. You have the conclusion reached, the premise from which it proceeds, the reasoning believed to sustain it and the contentions militating against its correctness so far as inquired into and examined. Respecting which view is correct lawyers and judges may not unlikely differ.

The presentation of these conflicting arguments is not at the expense of a categorical and explicit answer to your question. You are advised that as at the present informed, in the opinion of the judge advising you, a negative answer is required to your question, namely,

one to the effect that it is not legally possible for the persons referred to to appear and testify before you in your pending investigation without such persons thereby becoming by virtue of the provisions of section 584 of the Penal Law immune from prosecution and nonpunishable for the crime of conspiracy. Not as though throwing a weight into the balance, you are moreover entitled to know, and are therefore told, that this advice is given without present entertainment of doubt as to its correctness.

Appreciative acknowledgment is made of assistance courteously rendered in the consideration of the question presented by your request by the district attorney of the county and with his permission by Assistant District Attorneys Johnstone and Bostwick and by Hon. Delancey Nicoll and Mr. Paul D. Cravath, of counsel, for the persons referred to in your communication.

The duty of advising you is now discharged. With you remains the responsibility of weighing with open mind and independent judgment the advice as given. With you remains the responsibility of acting solely as conscience and judgment may dictate. Assume that responsibility. Discharge that duty by thoughtful, unhurried, unimpassioned consideration. Doubt and hesitate to adopt—although you may be unable to detect a flaw in the reasoning leading to it—a result unjust in the light afforded by the situation which confronts you. This light is possessed by yourselves alone. Although the advice given is upon a point of law, test the validity of the reasoning from the moral as well as the mental viewpoint, for injustice in a result may be symptomatic of legal error. Remember that in a sense it has not been subjected to such a test, for the actual situation before you is known to you, but not to your adviser. Bear in mind to the time of your decision that, if the law be correctly ascertained and correctly applied, it is likely to attain a result just to the people of the state and to these persons.

Mr. Foreman, the request as presented is now returned to you, together with the letters referred to in it, in order that your body may make such disposition of them for the purposes of the record or otherwise as may be proper.