THE PEOPLE OF THE STATE OF NEW YORK ex rel. EDWARD F. BOYLE, Appellant, v. MICHAEL J. CRUISE, as City Clerk of the City of New York, and JOHN R. VOORHIS and Others, as Custodians of Primary Records and Constituting the Board of Elections of the City of New York, Respondents.

First Department, July 1, 1921.

Constitutional law — Aldermanic Reapportionment Act (Laws of 1921, chap. 670, amdg. Greater New York charter, § 19) is constitutional — apportionment of aldermanic districts need not be based upon equality of population — fifteen days within which city may act on special city law under Constitution, art. 12, § 2, begins to run on date of mailing of bill — said constitutional provision construed with General City Law, § 34.

The Aldermanic Reapportionment Act (Laws of 1921, chap. 670, amdg. Greater New York charter, § 19) is not unconstitutional upon the ground that the apportionment formation of the aldermanic districts is not measured

by the number of residents or inhabitants or is disproportionate thereto, for there is no requirement in the Constitution that the reapportionment of aldermanic districts shall be based upon the equality of population; nor is said act unconstitutional upon the ground that the Legislature repassed it before the expiration of the fifteen days allowed to the mayor of the city of New York to consider and return the same under section 2 of article 12 of the Constitution, where said act was mailed to the mayor on the thirty-first day of March, received by him on April first, and again passed by the Legislature on April sixteenth, on the theory that it had not been returned within fifteen days, for the fifteen days within which the mayor shall return the bill to the house from which it was sent as required by section 2 of article 12 of the Constitution begins to run upon the date of the mailing of the bill in Albany and not upon the date when it is received in New York city.

The provision of section 34 of the General City Law that the clerk of the house in which the particular bill originates shall place thereon the date of the " transmission " to the mayor of the city is controlling in the interpretation of the aforesaid constitutional provision, for, if by the word " transmission " is meant the receipt of the bill by the city authorities, the provision of the General City Law would be incapable of enforcement.

APPEAL by the relator, Edward F. Boyle, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 6th day of June, 1921, denying relator's motion for a writ of mandamus to compel the authorities of the city of New York to disregard the Aldermanic Reapportionment Act, chapter 670 of the Laws of 1921 (amdg. Greater New York charter [Laws of 1901, chap. 466], § 19, as amd. by Laws of 1916, chap. 540), in connection with notices required by the Election Law (§ 293, as amd. by Laws of 1913, chap. 820) to be given for the forthcoming election of a board of aldermen, on the ground that such act of 1921 is unconstitutional.

*John Godfrey Saxe* of counsel [*Robert L. Luce, William A. McQuaid, John Ingle, Jr.,* with him on the brief; *George W. Olvany,* attorney], for the appellant.

*Robert P. Beyer, Deputy Attorney-General,* of counsel [*Charles D. Newton, Attorney-General*], for the respondents.

*Leonard J. Obermeier* of counsel, for the Republican County Committee, New York County, intervenor, respondent.

SMITH, J.:

This proceeding challenges the constitutionality of the act in question upon two grounds: *First,* upon the ground that the apportionment formation of the aldermanic districts is not measured by the number of residents or inhabitants, but is disproportionate therein; and, *second,* upon the ground that the Legislature repassed the act before the expiration of the fifteen days allowed to the mayor of the city of New York to consider and return the same under article 12, section 2, of the State Constitution.

As to the first ground I think the challenge cannot be sustained. The aldermanic districts are apportioned substantially as are the assembly districts in the city. That apportionment has been acquiesced in and has not been judicially questioned. Nor, do I think that it can be successfully questioned. There is no requirement in the Constitution that the apportionment of aldermanic districts should be based upon the equality of population. In *Matter of Dowling* (219 N. Y. 44, 54) the Court of Appeals quoted from the Revised Record of the Constitutional Convention of 1894 (Vol. 4 [1900], pp. 1255, 1256): " We believe the provision to be sound in principle, that somewhere in every representative government there should be a recognition of variety of interest and extent of territory as well as of mere numbers united in interest and location. Such a departure from the rule of strict numerical representation is recognized by the Constitution of the United States in the organization of the Senate, by the Constitution of the State of Pennsylvania in limiting the representation which the city of Philadelphia may have in its Senate to one-sixth of its members, and by the Constitution of the State of Maryland in limiting the representation which the city of Baltimore may have. Similar provisions have been adopted by the State of Ohio affecting Cincinnati and Cleveland, the State of Missouri affecting St. Louis, the State of Rhode Island affecting Providence, and by other States of the Union having large cities. It is the rule, rather than the exception, throughout the Union."

It is not claimed that the difference in population was occasioned by any attempt to gerrymander the districts as that word is commonly used. Staten Island has become a

part of the greater city of New York with large territory and many substantial interests, which it is peculiarly within the province of the board of aldermen to supervise. To require an aldermanic district upon Staten Island to represent the same numerical population would be to disregard many material interests in that locality which are the subject of supervision and regulation by the board. Notwithstanding the general rule, where such interests are not involved, where the equality of population is a fair basis of apportionment in a city situated as is New York city with a congested population in certain localities and a more limited population in outlying districts, the interests of the community may well require those outlying districts to be represented to a greater extent than would be the case if their right to representation were measured simply by the number of their inhabitants. Without any requirement in the Constitution to make the extent of the population the basis of the apportionment other interests are entitled to be regarded in determining the division of aldermanic districts and I am unable to find any such discrimination as violates any principle which lies at the foundation of a fair apportionment and division of such districts.

The principal ground of challenge, however, arises under the provisions of section 2 of article 12 of the Constitution. It is therein provided that special city laws shall not be passed except in conformity with the provisions of this section, and the provision further reads: " After any bill for a special city law, relating to a city, has been passed by both branches of the Legislature, the house in which it originated shall immediately transmit a certified copy thereof to the mayor of such city, and within fifteen days thereafter the mayor shall return such bill to the house from which it was sent, or if the session of the Legislature at which such bill was passed has terminated, to the Governor, with the mayor's certificate thereon, stating whether the city has or has not accepted the same. In every city of the first class, the mayor, and in every other city, the mayor and the legislative body thereof concurrently, shall act for such city as to such bill; but the Legislature may provide for the concurrence of the legislative body in cities of the first class. The Legislature shall provide

for a public notice and opportunity for a public hearing concerning any such bill in every city to which it relates, before action thereon. Such a bill, if it relates to more than one city, shall be transmitted to the mayor of each city to which it relates, and shall not be deemed accepted unless accepted as herein provided, by every such city. Whenever any such bill is accepted as herein provided, it shall be subject as are other bills, to the action of the Governor. Whenever, during the session at which it was passed, any such bill is returned without the acceptance of the city or cities to which it relates, or within such fifteen days is not returned, it may nevertheless again be passed by both branches of the Legislature, and it shall then be subject as are other bills, to the action of the Governor. In every special city law which has been accepted by the city or cities to which it relates, the title shall be followed by the words ' accepted by the city,' or ' cities,' as the case may be; in every such law which is passed without such acceptance, by the words ' passed without the acceptance of the city,' or ' cities,' as the case may be.''

The bill in question was passed upon the thirty-first day of March, and immediately mailed by the clerk of the Assembly, in which the bill originated, to the mayor of the city of New York, who received the same on April 1, 1921, about eleven o'clock. On April 16, 1921, the bill was again passed by both branches of the Legislature on the theory that the certified copy had not been returned within such fifteen days. The sole question on which the Legislature acted was '' Shall this bill become a law, notwithstanding the failure of the mayor to return to the house the bill within the time fixed by the Constitution,'' the Speaker ruling that the bill should have been returned to the house before midnight of April fifteenth. After this bill was passed by both branches of the Legislature the Governor signed the bill, and upon the bill it was stated that the same was passed without the acceptance of the city. The question for determination here is whether the fifteen days in which the city may act and return the bill begins to run upon the date that the bill was mailed in Albany, or upon the date upon which it was received in New York city. The validity of the bill, therefore, depends upon the construction by the Legislature and by the Executive of the State that the

fifteen days began to run at the time that the bill was mailed by the clerk of the Assembly to the mayor of the city of New York. If it did not begin to run until it was received by the mayor of the city of New York upon April first the fifteen days did not expire until midnight of April sixteenth. Just before midnight of April sixteenth the bill was returned to the Executive without the acceptance of the city. The learned counsel for the appellant argues that the principle of home rule has been thus violated and seems to see a great peril to that principle in the construction thus placed upon the Constitution by the Legislature and by the Executive. I do not at all share in the apprehension of the appellant's counsel. The principle of home rule is in no way involved. One or two days at most would be required from the time of the mailing of the bill by the clerk of the Assembly to the mayor of any city in New York State. Whether the city authorities have under the Constitution thirteen, fourteen or fifteen days to consider the bill and return the same to the Legislature is to my mind a matter of little moment. The Constitution might have limited the time to ten days, and the principle of home rule would still have been maintained. There is no question that the city authorities have ample time in which to pass upon the bill, whether the Constitution be construed to allow thirteen, fourteen or fifteen days for its consideration. The question for determination is purely a question of constitutional construction unembarrassed by considerations of the principle of home rule or any other purpose which was intended to be accomplished by the provision.

Constitutions, as well as statutes, must be construed from a common-sense standpoint in a way which will make their operation practicable. If the bill related to several cities, the date of the receipt of the bill by the authorities of those cities might vary one or two days. The Legislature is not presumed to know the exact space of time which will pass upon the mailing of the bill before its receipt by the city authorities, and still the limit of fifteen days before it is returned is a point of time of which the Legislature must have exact knowledge, in order to conform to the Constitution in repassing a bill, in case the same is not returned with the acceptance of the city within the time prescribed. There is no provision

in the Constitution that the Legislature should be notified when the bill is received by the city authorities and no way of ascertainment except by affidavits which might be forwarded and for which no provision is made in the Constitution. Such affidavits might conflict. The knowledge of the Legislature as to whether the city authorities have had possession of the bill for the time prescribed in the Constitution cannot rest upon any uncertainty or upon any proof by notification or affidavit. Any construction of the constitutional provision, therefore, which creates this uncertainty will be avoided if possible to the end that the Legislature may perform its constitutional duties upon facts warranting such performance. We are given little assistance by the lexicographers as to the meaning of the word " transmit." Undoubtedly in some cases that word should be construed to include delivery, and yet the transmission of a letter or of a notice, where such letter or notice may be sent through the mails, can only mean a delivery of the letter or the notice to the postal authorities. The framers of the Constitution are presumed to have had in mind the day or two that might be necessary for the receipt of the paper to be transmitted and to have provided a time sufficient and to have taken that into consideration and still to allow the city authorities such time as it deemed reasonable to consider and pass upon the bill which it must accept, or not, as it might determine. To my mind a controlling interpretation of this constitutional provision is contained in the law which was passed to carry out this provision of the Constitution. The General City Law, passed in 1895 as chapters 1 and 9 of the Laws of 1895 and re-enacted in 1900 as chapter 22 of the General Laws (Laws of 1900, chap. 327), and in 1909 as chapter 21 of the Consolidated Laws (Laws of 1909, chap. 26), provides for the transmission of these bills to the mayor of the city, and provides by section 34, which was re-enacted from sections 4 of the acts of 1895, that the clerk of the house in which the particular bill originated shall put upon the bill the date of such transmission. If, by the word " transmission " is meant the receipt of the bill by the city authorities, this provision of law would be incapable of enforcement, because the clerk of the house in which the bill originated would not be able to put upon the bill the date when the bill would be received by the

city authorities. This provision of the statute seems to me to be a clear indication of the interpretation of the Legislature of this constitutional provision, as fixing the date of the transmission as the date of the mailing of the bill to the city authorities. While the Legislature cannot by statute modify the provisions of the Constitution, nevertheless the interpretation of the Constitution by the Legislature in passing the bill for the carrying out of the specific provision of the Constitution is, to my mind, of very great, if not controlling significance, in determining that interpretation when the provision shall come before the court for its construction. Of course, if the interpretation given by the Legislature be clearly at variance with the interpretation which the court will put upon the terms used in the Constitution, that interpretation would have less force. Where that interpretation is in doubt the court should adopt the interpretation given by the Legislature, especially where rights secured by the Constitution are safeguarded.

In my judgment the Special Term correctly interpreted the constitutional provision and the order should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., DOWLING, PAGE and GREENBAUM, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.