Public Shoe Stores, Inc., Appellant, v. Jacob Goldstein, Respondent, Impleaded with Louis Jacobskind and Another, Defendants.

First Department, March 1, 1929.

*Julius Hahn,* for the appellant.

*Charles G. F. Wahle* of counsel [*Wahle & Kringel,* attorneys], for the respondent.

McAvoy, J. The complaint in this action was dismissed against one of the defendants, Jacob Goldstein, and a judgment was rendered for the plaintiff only against Dunsay, a codefendant. The plaintiff appeals because of this judgment of dismissal in Goldstein's favor.

The contention of appellant is that there is joint liability on the part of both Goldstein and Dunsay since their conduct in respect of the sale of plaintiff's business constituted a fraud upon the plaintiff company whereby it was deprived of at least $15,000.

The complaint states the nature of the plaintiff's grievance by allegations which show that, while plaintiff was actively operating a retail shoe business, the equal ownership of its shares being held by four persons, one of whom was Dunsay, the defendant Dunsay, a director and secretary of plaintiff, was the exclusive manager of the business. Dunsay was the expert and had familiarity with all the details of operation. He was in full charge and his associates relied upon what he told them.

During the period of 1921 from January first to August first the business was conducted without a profit and Dunsay represented to the directors that the operation of the business had resulted in a loss and that it would be of advantage to sell the business to one Goldstein for $36,661 in cash, which represented their investment in the business, and in addition as consideration to have him assume the entire outstanding debts of the plaintiff. The plaintiff's officers believed these representations and, relying upon Dunsay's report and action in bringing about the sale as had in good faith, agreed to the sale to Goldstein for the consideration mentioned.

The proof shows conclusively that this transaction recommended

by Dunsay was arranged by him with Goldstein pursuant to an agreement between them which resulted in a fraud upon the company and thus to his fellow-stockholders. Under this agreement Dunsay received from Goldstein for his own use and benefit, and as a bribe for bringing about the sale of plaintiff's business, the sum of $15,000 in addition to that paid to plaintiff for the sale. It is evident that this arrangement was in violation of Dunsay's duties as a stockholder, officer and director of the company and that this was known to Goldstein and was not made known to the officers or directors. Nor was any of the sum thus received contributed to the corporate fund. Doubtless such a transaction as the finding holds this to be and as the evidence indicates that it was, runs against every moral and ethical concept governing the relations which ought to exist between persons who are principal and agent, and where besides the culprit was a joint stockholder of the enterprise whose sale he was conducting.

To permit an agent to receive $15,000 secretly and in fraud of the joint owners of the business for his own use over and above the consideration cannot be condoned upon any ingenious theory that the agent detached himself from his duties only long enough to advise his associates in behalf of Goldstein that they should sell the business for the stated consideration and that such payment was in the nature of a gratuity only.

We are not impressed with this fallacy of the market place.

Goldstein told no one in the company or out of it about the transaction until he was sued in September, 1923, on some of the notes which he gave in discharge of his payment of $15,000, when he told two of the directors of the corporation about it and said that he was willing to pay the $15,000 to them, but would be unwilling to pay it twice, that is, once to Dunsay or his transferees and once to the corporation which really owned the fund. He is thus on his own confession chargeable with knowledge of the purpose and object of the secret payment to Dunsay and that it was to be concealed from his associates and thus he participated in a fraud upon plaintiff which caused the loss and damage to it. Thus Goldstein and Dunsay are both tort feasors in participation in the fraud against plaintiff's right. He aided and abetted Dunsay in this breach of trust and is doubtless jointly liable for that which Dunsay should have turned over to the company. Dunsay was a trustee in respect of this sale. He could not receive or participate in any compensation beyond that which his fellow-directors would receive as consideration and the person who knowingly participated in and aided him in committing this breach of trust and misapplication of the funds of a trust is equally liable with the trustee.

It seems to have been the opinion of the learned court at Special Term that lack of evidence of inadequacy of consideration for the sale, or damage to plaintiff therefrom by reason of what Goldstein did, relieved Goldstein of liability upon the theory that since he paid the price for the business which was arranged for by Dunsay and his associates, which was in every way satisfactory to them all, the bribe paid, even though it resulted in the trustee depriving his beneficiary of the additional sum paid him, cannot be recovered without proof that the value of the business was at least that much more than the amount actually paid. Apart from the fact that the learned trial court excluded evidence offered by plaintiff of the value of the business upon the ground that it was unnecessary because the sum paid was recoverable in any event, there was evidence that Goldstein knew that the stores constituting the plaintiff's business were worth more than was actually paid to the company itself. Dunsay testified that the stock at the time of the sale had reached "the highest point we had probably ever had, about $160,000 worth of shoes, or maybe more." Having in view the extreme depreciation of values at this period, it is obvious that the sum paid by Goldstein was so far less than the worth of the stock and business that $15,000 would be a sum much diminished from that which might have been recovered upon strict proof of damage. There is a fair inference that both Goldstein and Dunsay, experts in the business, long negotiating the price to be paid to the plaintiff and the price to be paid as a bribe, arrived at something less than the true worth of the property purchased, and that plaintiff was damaged at least to the amount which was paid to the dishonest agent. Goldstein should, therefore, be held for such sum as the plaintiff lost by his fraudulent dealings with this cotrustee of the plaintiff.

The judgment so far as it dismisses the complaint as against Goldstein should be reversed, with costs, and judgment directed against him for the sum of $15,000 with interest and costs, less a credit in the sum of $10,000 paid by Dunsay.

DOWLING, P. J., FINCH, MARTIN and O'MALLEY, JJ., concur.

Judgment so far as appealed from reversed, with costs to appellant, and judgment directed for plaintiff against defendant Goldstein in the sum of $15,000 with interest and costs, less a credit of $10,000 paid by defendant Dunsay. Settle order on notice reversing the findings inconsistent with this determination and containing such new findings of facts proved upon the trial as are necessary to sustain the judgment hereby awarded.