THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MAX FINE, Defendant.

Supreme Court, Extraordinary Trial and Special Term, Orange County, April 12, 1940.

*John J. Bennett, Jr., Attorney-General* [*Edward G. O'Neill* and *John F. Tucker* of counsel], for the plaintiff.

*Max Levinson*, for the defendant.

PERSONIUS, J. The defendant was indicted May 25, 1939, charged with the violation of section 982 of the Penal Law, in that he unlawfully owned and rented slot machines. (All references are to the Penal Law unless otherwise specified.) He was tried and on February 6, 1940, the jury rendered a verdict of guilty. Sentence was deferred. He has not yet been sentenced. On March 5, 1940, the defendant was subpœnaed before the grand jury, appeared, sworn and examined. He alleges that his examination referred to the matters for which he was indicted and tried, and other matters. The defendant contends that his examination intermediate the verdict of guilty and his sentence renders him immune from sentence.

Section 996 provides that no person shall be excused from testifying upon an investigation or trial for a violation of article 88 (gambling), but that "no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify * * *." The State Constitution provides (Art. 1, § 6): "No person * * * shall be compelled in any criminal case to be a witness against

himself." Conceding that the defendant would have been immune from indictment or trial, if *prior* thereto he had been required to testify relative to the matters with which he was charged, the question here is whether the giving of such testimony *after* indictment, trial and the rendition of a verdict of guilty, renders the defendant immune from sentence. In construing this constitutional provision and section 996, we are, in the absence of controlling authority, left to the language and purpose of these provisions and to expressions of the courts relative thereto. " The words of the Constitution, like those of any other law, must receive a reasonable interpretation, considering the purpose and the object in view." (*Association for Protection of Adirondacks* v. *MacDonald*, 253 N. Y. 234, 238; *People ex rel. Boyle* v. *Cruise*, 197 App. Div. 705, 710; *American Historical Society* v. *Glenn*, 248 N. Y. 445, 451.)

The purpose of section 996 and similar statutes (584 and 381) " was to place such evidence within reach of the prosecution while giving to the person imparting it all substantial benefits conferred upon him " by his constitutional rights. (*Matter of Grand Jury*, 135 N. Y. Supp. 103, 108, 109.) That the immunity granted by section 996 must be " co-extensive with the constitutional provision * * *, that nothing short of absolute immunity from prosecution [can] take the place of the constitutional privilege," is well settled. (*People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253, 262, 263, 265.)

What is the purpose of this constitutional provision, section 996, and similar statutes? What protection or privilege are they intended to grant? It seems apparent that both were intended to protect every person from giving testimony which directly or indirectly would be helpful to the prosecution in securing an indictment or a conviction on trial, and the privilege of refusing to give such testimony. Does the fact that a defendant is required to testify after he had been indicted, tried and found guilty, detract from or violate such privilege or protection?

Section 996 and similar sections, 584 and 381, were " designed to give an immunity as broad as the constitutional privilege, and no broader." They accomplish this and no more. (*Matter of Rouss*, 221 N. Y. 81, 86.) Section 996 provides that no person shall be excused from testifying upon the ground that the testimony required " may tend to convict him of a crime * * *; but no person shall be prosecuted * * * on account of any transaction * * * concerning which he may so testify." The language indicates an intent to require a person to give testimony which " may," in the future, tend to convict him, but that he " shall " not, in the future, be prosecuted.

The defendant argues that a defendant who is required to testify at any time, even after a verdict or plea of guilty, receives amnesty which is equivalent to a pardon. If so the same result would follow if a defendant was compelled to testify after sentence. The contrary has been held in *People ex rel. Hunt* v. *Lane* (132 App. Div. 406; affd., 196 N. Y. 520). There the defendant was convicted under the Election Law and sentenced. Before incarceration he was subpœnaed in a John Doe proceeding and interrogated relative to the violations at the same election. His testimony also related to the crime for which he had been convicted. Thereupon his attorney brought habeas corpus, claiming that the defendant by being required to so testify was immune from serving his sentence. The court held that compelling the defendant to give testimony subsequent to his sentence did not give him immunity from serving his sentence, saying (p. 409): " It not infrequently happens that a person serving a sentence * * * is brought into court to testify as to the participation of another in the crime of which he has been convicted. It has never heretofore been claimed that the effect of giving such testimony was to work an immediate pardon or suspend the further execution of the sentence." By way of dictum the court expressed the thought that the Legislature *may* have intended " not only that no indictment or prosecution [trial] should follow such examination [of the defendant], but that the judicial act of fixing the punishment should precede it if he had already been convicted," *i. e.*, found guilty. The court did not so hold. The defendant was remanded and served his sentence. In a concurring opinion, Justice GAYNOR said (p. 410): " Immunity has no reference to persons already convicted of the crime."

" The main purpose of the [constitutional] provision was to prohibit the compulsory oral examination of prisoners *before trial, or upon trial,* for the purpose of extorting unwilling confessions or declarations implicating them in crime. It could reach further only in exceptional and peculiar cases coming within the spirit and purpose of the inhibition." (Italics supplied.) (*People* v. *Gardner,* 144 N. Y. 119, 128.) This language was quoted with approval in *Matter of Schmidt* v. *District Attorney* (225 App. Div. 353, 354), where the court said: " The purpose of this [constitutitional] provision is to protect not the guilty but innocent persons accused of crime, and it should be the aim of the courts to so interpret this provision that it *cannot be used as a shield by the guilty.*" (Italics supplied.) " The design of the constitutional privilege is * * * to protect him against being compelled to furnish evidence to convict him," that is, to convict in the future.

(*Brown* v. *Walker*, 161 U. S. 591, 605.) " The principle established by these decisions is that no one shall be compelled * * * to disclose facts or circumstances that *can be used against him as admissions tending to prove his guilt or connection with any criminal offense of which he may then or afterwards be charged."* (Italics supplied.) (*People ex rel. Taylor* v. *Forbes*, 143 N. Y. 219, 228.) If the Statute of Limitations has fully run against the crime, the privilege no longer exists. The same is true when the witness has been tried and acquitted. (Spellman's Criminal Code of N. Y. pp. 35, 36, and cases cited.) Why? Because his testimony can no longer be used against him in procuring an indictment or upon his trial. The same result follows if he has already been indicted, tried and adjudged guilty. " The constitutional guaranty is confined to cases where there is real danger [of prosecution] * * *. But in any view the danger to be apprehended must be real, with reference to the probable operation of law in the ordinary course of things, and not merely speculative, having reference to some remote and unlikely contingency." (3 Wharton's Criminal Evidence [11th ed.], § 1136, p. 1975.) Again, section 1140: " A person may not be called as witness in any judicial inquiry which has for its primary object the determination of his guilt or innocence of a given offense." " However broad the language of the statute may be, the letter does not govern unless the intention of the Legislature is thereby given effect." (*Schieffelin* v. *Lahey*, 243 N. Y. 102, 111.)

The defendant argues that " prosecuted " as used in section 996 includes conviction and that " conviction " means the passing of sentence or final judgment. For certain purposes it does. (*Matter of Lewis* v. *Carter*, 220 N. Y. 8; *People* v. *Fabian*, 192 id. 443; *People ex rel. Marcley* v. *Lawes*, 254 id. 249; *People* v. *Mariendi*, 213 id. 600, 616; *Faunce* v. *People*, 51 Ill. 311.) But in the last case the court said: " It is true, that writers and judges have loosely said, that a party is convicted on the finding of a verdict against him."

That the Legislature at times uses the word " convicted," in referring to a verdict or plea of guilty, as distinguished from the final judgment or sentence, clearly appears from section 485-a of the Code of Criminal Procedure. It requires that the court in which any person shall be " convicted," *before* passing the sentence therefor, shall ascertain by the examination of such " convict " on oath whether such " convict " has a trade, etc. Here, clearly, the Legislature refers to a person who has pled guilty or been found guilty by a jury, as " convicted " and directs his examination under oath as to certain matters. The constitutionality of

this section has apparently never been questioned. Referring to section 485-a, the court said in *People ex rel. Bretton* v. *Schleth* (68 Misc. 307, 308): " The examination under the section  *  *  * is had after conviction." There the court clearly referred to a plea of guilty as a conviction.

We are aware of the language used by our Court of Appeals. In *Matter of Rouss* (221 N. Y. 81, 87) it said of a similar section: " The statute is a grant of amnesty. The witness is to have the same protection as if he had received a pardon." In *Matter of Doyle* (257 N. Y. 244, 258) it said: " It [amnesty] wipes out as to the witness whose claim of *privilege* has been denied the criminal statutes of the State with all their pains and penalties, and, like a pardon, makes him a new man." (Italics supplied.) In none of these cases had the defendant been found guilty by a jury *before* he was required to testify.

Sentences may be picked from opinions but " It is always to be remembered that broad general statements in any opinion are to be read in connection with the facts of the particular case before the court " (*Matter of Green* v. *Miller*, 249 N. Y. 88, 97), and " It is a rule of universal application that general expressions used in a court's opinion are to be taken in connection with the case under consideration." (*Bramwell* v. *United States F. & G. Co.*, 269 U. S. 483, 489.)

Under section 996 and similar sections, the immunity must be as broad as the privilege destroyed. (*Matter of Doyle, supra,* p. 257; *Matter of Rouss, supra*, p. 86.) Again, what " privilege " has been destroyed? Is it not simply the privilege of refusing to testify and thereby provide evidence, or a clue to evidence, or a link in the chain of proof, to be used against the witness before the grand jury in procuring his indictment or before the trial court at his trial?

Persons indicted, tried, found guilty and sentenced are frequently returned from their place of incarceration to give testimony against accomplices in the crime for which they were convicted. If by so doing, they receive immunity which is in effect a " pardon," should they not thereupon be released from their incarceration?

The defendant cites *People ex rel. Scharff* v. *Frost* (198 N. Y. 110). There a defendant pled guilty to seduction. Before sentence he married the complainant, and sentence was suspended. Still later the suspension was revoked and sentence pronounced. Section 2176 provides that the subsequent marriage of the parties " is a bar to a prosecution " for seduction. The court said (p. 113): " If the prosecution of the relator was not ended until judgment

[sentence] was actually rendered upon his plea of guilty, then his marriage operated as a bar to the rendition of judgment. Such seems to us the necessary meaning and effect of the statute." The court was simply construing the statute, section 2176. The fact that the parties were not married was a vital element of the crime (§ 2175). The court speaks (p. 114) of the offense as being "absolved" by the subsequent marriage of the parties and of the act (§ 2176) as an "unconditional repeal" of section 284, now section 2175. In other words, by the marriage of the parties the offense was wiped out and the law so far as the defendant was concerned repealed. The defendant also cites *Evans* v. *The State* (District Court of Ohio, 1852, 10 West. Law Jour. 49; 1 Ohio Dec. 436). The statute provided that the witness should not be indictable or punishable. Assuming that the statute was in effect the same as here, we cannot follow it.

The defendant cites many other authorities granting immunity. In all of them the defendant had been compelled to testify, either before indictment or before trial, or before a trial *de novo* on appeal.

We hold that the constitutional provision gives the defendant the privilege of refusing to testify at any time before a plea or verdict of guilty and that section 996 of the Penal Law protected him against prosecution if he was required to testify at any time prior to such plea or verdict, but that requiring him to testify thereafter, even though such testimony related to matters concerning which he had been found guilty, did not deprive him of any privilege or protection granted thereby or by the Constitution.

The defendant argues that his conviction may be reversed and a new trial result. If so, it may well be that he would be immune from retrial. This question is not here. He also argues that his testimony before the grand jury may work to his disadvantage when sentenced. If he testified to the matters of which he has been convicted, it can add nothing to the effect of the verdict of guilty. If he testified to transactions or matters not related to those for which he has been tried and convicted, section 996 does not give him immunity. It gives immunity from prosecution on account of the matters concerning which he testified and those only.

This motion to inspect the minutes is made for the purpose of using them on a motion or proceeding to establish the defendant's immunity from sentence. Holding as we do that his testimony, given after the verdict of guilty does not render the defendant immune, the motion is denied.

Submit order accordingly.