Johnston, J.
Proceeding by way of writ of habeas corpus ■ to test the legality of relator’s detention pursuant to an order of the County Court, Kings County, dated September 19, 1950, which directed that relator enter into an undertaking with surety in the sum of $250,000, as a witness on behalf of the People upon an investigation by the Kings County Grand Jury, which investigation was then and is now pending in the County Court, or if such undertaking should not be furnished, that relator be committed to the Kings County Civil Prison. Delator has been committed upon his failure to furnish the undertaking and is still in custody.
In view of the facts disclosed by this record, the bail of $250,000 fixed by the order of September 19, 1950, while high, is not excessive, and relator’s detention for eleven weeks is not unreasonable.
It appears that relator is a necessary and material witness for the People in the investigation now being conducted by the Grand Jury into the existence of gambling, book-making, racketeering and all forms of organized crime in Kings County. The focal point of the inquiry revolves about the relationship between criminals and members of the police department. Obviously such an investigation is difficult and tedious. If it is to be thorough, it necessarily must be protracted. While the Grand Jury has been in continuous session for nearly a year, its work is not completed and its term has been extended to March 31,1951.
Delator is a book-maker, whose activities were not confined to Kings County but extended into Nassau County. His betting operations exceeded $50,000 daily. It taxes credulity to believe that such extensive criminal practices could continue without the knowledge and, perhaps, the connivance of some *549 members of the police department. The Grand Jury has evidence of illegal relationship between relator and certain members of the police department, and that relator entertained many police oEcers at his home and made gifts, including television sets, to them. Shortly after he was apprehended last September, relator attended before County Judge Leibowitz and admitted that he had bribed police oEcers. He also told the Judge that if he talked he would implicate many police oEcials and furnish corroborating evidence of gifts and payments of money to them. In the light of the above facts it is clear that the County Judge, in the exercise of discretion, was justified in holding that relator was a necessary and material witness, and fixing bail at $250,000, particularly as it also appeared the relator is not engaged in any legitimate pursuit and, apart from his criminal activities, has no visible means of support, and that there was reasonable ground to believe that he could not be served with process and would not appear to testify when required. In other words, it is apparent that in making the order fixing bail, the County Judge had in mind the elements referred to by the Court of Appeals in People ex rel. Rao v. Adams (296 N. Y. 231, 234), to wit.: the seriousness of the crimes under investigation, the extensive criminal operations of relator, his relation to those against whom he may be called to testify, the possibility of his flight to avoid giving testimony, and the dificulty of procuring his return if he sought asylum in any of the ten States which have no reciprocal witness laws. Though in the case last cited the relators had been detained three months, nevertheless the bail of $250,000 for each relator was not disturbed, the court stating that relief will be granted “ only to prevent invasion of constitutional right, not because of difference of opinion as to the amount fixed.” Moreover, on October 11,1950, this court denied relator’s application for reduction of bail. (277 App. Div. 992.)
On November 29, 1950, an information was filed in the Court of Special Sessions against relator and some thirty others, charging conspiracy and book-making. The first count charges that defendants, in violation of section 580 of the Penal Law, conspired with divers "other persons, including members of the police department, to commit a crime, to wit.: book-making. While five present or former police oEcers are named as coconspirators, they are not named as defendants. The remaining sixty-five counts charge relator, in violation of section 986 of the Penal Law, with the crime of book-making. Eelator has *550 entered a plea of not guilty to the information and has been paroled or discharged in his own custody, in view of the fact that he is now confined in default of the $250,000 bail. The trial has been set for January 3,1951, and the District Attorney states he will be ready to proceed to trial on that day.
Eelator contends that, as he is now a defendant named in the information, the order of September 19, 1950, committing him as a necessary and material witness, should be vacated and he should be released.
There is no statute which prohibits and, as far as I am aware, no judicial fiat which indicates that a person may not at the same time be held as a defendant in a criminal prosecution and as a necessary and material witness in another criminal action or proceeding. I assume that a defendant in a criminal action may not also be held as a material witness in that action, but that is not the situation here. As heretofore pointed out, relator, who is one of the defendants named in the information, is held as a necessary and material witness, not in the pending criminal action, but in the present Grand Jury investigation.
If relator were now called as a witness before the Grand Jury or on the trial as a witness against the other defendants, he could be compelled to testify, but he would receive immunity. (Penal Law, §§ 584, 996.) Whether relator is adjudged guilty or acquitted in the Court of Special Sessions, he may be compelled to testify, before the Grand Jury for, under such circumstances, no question of self-incrimination or immunity is involved, and his testimony can no longer be used against him in procuring an indictment, or upon his trial. (Penal Law, §§ 584, 996; People ex rel. Hunt v. Lane, 132 App. Div. 406, affd. 196 N. Y. 520; People v. Fine, 173 Misc. 1010, and cases cited.) But we are not now concerned with the consequences of relator’s testifying because the District Attorney states he does not intend to call him at the trial in the Court of Special Sessions, or before the Grand Jury, until the conclusion of the trial.
I disagree with my brother Carswell, who holds (p. 552), as “ it does not appear, that the scope of the investigation differs in any substantial particular from the field with which the information in Special Sessions is concerned * * * the relator may not be held as a defendant and as a witness at the same time * * As heretofore shown, the first count of the information charges that relator and his codefendants, with divers other persons, including members of the police department. *551 conspired to commit the crime of book-making. That is the sole charge in the first count, and the conspiracy alleged is confined to a violation of the laws against book-making. In my opinion the investigation before the Grand Jury is not thus limited but covers a much wider field. It is an inquiry into the existence not only of book-making but of gambling, racketeering and all forms of organized crime in Kings County which, of course, embraces official corruption.
The fact that the information in its first count charges that defendants conspired with five named present or former members of the police department and divers other persons, including members of the police department, does not indicate that the “ other persons ” are the same as those with respect to whom the Grand Jury wishes to interrogate relator as a witness. The District Attorney may, and doubtless does, desire to question relator before the Grand Jury with respect to his dealings and conspiracy with X, Y and Z, and yet prove on the trial that relator dealt and conspired with A, B and C. As in each instance the conspiracy may relate to different persons, the scope of the Grand Jury investigation is not the same as will be involved at the trial of the information in Special Sessions. Moreover, it is fair to assume that relator -will not be questioned before the Grand Jury as to the sixty-five substantive counts of book-making contained in the information. But the question need not be determined at this time because the District Attor-. ney in his affidavit states that relator is not to appear before the Grand Jury until the conclusion of the trial.
Unless relator’s constitutional rights will be invaded by his • continued detention, we may grant him no relief. (Cf. People ex rel. Rao v. Adams, 296 N. Y. 231, supra.) As a witness, he may not be subjected to unreasonable detention. (N. Y. Const., art. I, § 5.) Detention is not unreasonable, however, merely because it may be prolonged. Relator has been charged with the commission of crimes, upon evidence which we assume to be sufficient. (Code Crim. Pro., § 258.) The District Attorney is unwilling to call him as a witness until the charges against him shall be disposed of, because, if he testifies, he must be granted immunity from prosecution for participation in any matter or transaction concerning which he may testify. (Penal Law, §§ 584, 996.) The District Attorney should not be compelled, provided he proceeds promptly in the criminal action against relator, to jeopardize the People’s rights against him by calling him as a witnéss at this time, or to choose between *552 that course and the relinquishment of the security which the County Court has determined to be necessary to assure relator’s appearance as a witness. It is immaterial that bail for relator’s appearance as a defendant might protect the People’s rights as adequately as that required for his appearance as a witness. We are concerned only with the legality of relator’s present detention, which we find not to be unreasonable under all the circumstances, particularly in view of the nature and scope of the Grand Jury inquiry and relator’s admission to Judge Leibowitz that he was able to carry on his extensive and nefarious enterprise by bribing and corrupting police officials.
Each case must' be decided on its own record, and while the court should be astute to guard against the invasion of any right of relator, it must be realistic and also must be mindful of the rights of the People, as well as the Grand Jury and the District Attorney, who, accepting as true relator’s admission to the County Judge, are grappling with a most extraordinary and shocking situation.
The writ should be dismissed and the relator remanded.