Keating, J.
Called before a G-rand Jury investigating a conspiracy to intimidate witnesses who were to testify at a probe of violations of law involving public contracts, appellants, who had previously been convicted of assaulting one of the witnesses, were granted immunity (former Penal Law, § 2447). They then answered all the questions, admitting that they had been hired to commit the assault, but denying that they knew who their principals were.
Four days after appellants testified, the policeman who had arrested appellants was called before the same G-rand Jury. During the course of his testimony he told of appellants ’ attempt to bribe him not to be a witness against them and “ to get rid of the evidence.” This offer of a bribe was immediately reported to the District Attorney’s office.
Appellants were thereafter indicted for bribery and convicted, on their pleas of guilty, of attempted bribery. Prior to their pleas, however, they moved for inspection of the G-rand Jury minutes on the ground that they had been granted immunity from prosecution for the crime with which they were then being charged. Appellants were furnished with the minutes, but their motion to dismiss the indictment was denied. On appeal, the Appellate Division affirmed, one Justice dissenting.
The principal questions are two. The first is whether the immunity encompassed the crime charged in the present indictment. The second is whether appellants were the targets of the investigation and, if the answer is in the affirmative, does this require the dismissal of the indictment? We hold that the immunity only bars the use of the appellants ’ testimony or any *601 fruits thereof. Since the police officer’s testimony was in no way derived from anything said by appellants to the Grand Jury and itself established a prima facie case of bribery, the indictment was, therefore, based on sufficient and untainted evidence. Whatever testimony by appellants might be considered of some relevance to the bribery charge may properly be deemed harmless error (Chapman v. California, 386 U. S. 18). Likewise, we consider it immaterial whether or not appellants were the ‘ ‘ targets ’ ’ of this investigation.
The problem here arises from the confusion which has until recently existed concerning the scope of the immunity which the Constitution mandates must be given before a witness is required to yield his privilege against self incrimination. The source of the difficulty is an ambiguity in the Supreme Court’s opinion in Counselman v. Hitchcock (142 U. S. 547 [1892]). In Counselman the Supreme Court held unconstitutional a Congressional immunity statute which only immunized the use of the actual testimony. The statute did not protect the witness against the “ fruits ” of his testimony. Therefore, the immunity was not co-extensive with the security which the privilege affords. There was nothing to prevent the Government from using the testimony as a starting point for further investigation through which the discovery of additional incriminatory evidence might be procured. It was the statute’s failure to protect the witness against the indirect use of his compelled testimony which made it constitutionally deficient.
The entire weight of the decision was that the Fifth Amendment prohibited the direct or indirect use of the testimony (142 U. S. 547, 564, 585-586). At the close of the opinion, however, there was a dictum to the effect that an immunity statute “ must afford absolute immunity against future prosecution for the offense to which the question relates ” (142 U. S., at pp. 585-586).
Perhaps responding to this dictum Congress, shortly after the Counselman decision, passed, as part of the Interstate Commerce Act, a broadly phrased immunity law which has been interpreted by the Federal courts to grant what is commonly referred to as a “ transaction ’ ’ immunity. This 'barred the Government from prosecuting the defendant for any crime *602 mentioned by the witness during the course of his testimony. The constitutionality of the enactment was upheld in Brown v. Walker (161 U. S. 591 [1896]).
Time has shown that this ‘ ‘ transaction ’ ’ immunity type of statute was unnecessarily broad, that it gives witnesses an immunity not required "by the Constitution and that it has the effect of giving an unnecessary “ gratuity ” to crime. Where the People have a completely good case against a defendant without his testimony, there is not a single, sound policy reason, nor is there a constitutional compulsion, requiring that a grant of immunity gain a witness complete freedom from criminal liability for his wrongful acts simply because the acts were at some point mentioned to the Grand Jury (People v. Laino, 10 N Y 2d 161, 173). If he is protected from the use of his testimony or the fruits thereof, he loses nothing if he is then convicted on independent and untainted evidence.
In our view, the Supreme Court’s decision in Murphy v. Waterfront Comm. (378 U. S. 52) has finally resolved the ambiguity raised in Gounselman on the necessary scope of an immunity statute. (See, also, Gardner v. Broderick, 392 U. S. 273.) Following Malloy v. Kogan (378 U. S. 1), which made the self incrimination privilege applicable to the States, the Supreme Court was immediately confronted with the problem of how to accommodate the possible conflicts among criminal law enforcement agencies arising from our Federal system. The court in Murphy held that, as a consequence of its holding in Malloy, the Federal authorities would be barred from any prosecutional use of ¡State “ compelled testimony and its fruits ” where a witness is granted immunity after, asserting his privilege (378 U. S., at p. 79). No transaction immunity was granted as the footnote to Justice Goldberg’s opinion at this point makes patent: 1 ‘ Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.”
Thus only a restriction on use is required. Of significance here is the constitutional basis of the decision. It does not rest upon the Supreme Court’s supervisory power over the admin *603 istration of justice in the Federal courts. (See concurring opn. of Justice Hablan [378 U. S., at pp. 80-81].) Justice White’s concurring opinion specifically emphasizes this very point that the Constitution requires only a prohibition from use not an absolute immunity (378 U. S., at pp. 92-93). Subsequent decisions of the court reinforce the conclusion that the essence of a valid immunity statute is that it must preclude the use in any manner of the compelled testimony and that is all. (Gardner v. Broderick, 392 U. S. 273, 278, supra; Sanitation Men v. Sanitation Comr., 392 U. S. 280, 284; see United States v. Blue, 384 U. S. 251, 255; see, also, discussion in Marchetti v. United States, 390 U. S. 39, 58-60 [Harlan, J.] and in Grosso v. United States, 390 U. S. 62, 81-83 [Warren, Ch. J.]; cf. Stevens v. Marks, 383 U. S. 234, 244-245 [Douglas, J.], 249 [Hablan, J.].)
New York’s law has had a similar confused history in this area (People ex rel. Lewisohn v. O’Brien, 176 N. Y. 253; People ex rel. Lewisohn v. Court of General Sessions, 96 App. Div. 201, affd. 179 N. Y. 594; Matter of Doyle, 257 N. Y. 244; see, also, discussion in Law Revision Commission Report (N. Y. Legis. Doc., 1942, No. 65[I], pp. 50-54). These cases are based on the absolute immunity interpretation of the Counselman case. As a consequence, section 2447 of the former Penal Law, which became law in 1953, parallels in language the Federal statutes which have been interpreted to grant an absolute immunity. There are dicta in the cases which would indicate that section 2447 of the former Penal Law is to be interpreted in a similar manner (People v. Ianniello, 21 N Y 2d 418, 424-425; see, also, People v. Laino, 10 N Y 2d 161, supra; People v. De Feo, 284 App. Div. 622, 627, revd. on other grounds 308 N. Y. 595). Still there is no holding to that effect. Since the question is still open, we should proceed to examine the issue in light of the recent clarifications of the law as to the required breadth of a valid immunity statute.
In Heike v. United States (227 U. S. 131) Justice Holmes, writing for a unanimous court, denied immunity in circumstances where the relationship between the compelled testimony and the later charge was entirely too insubstantial. His opinion also suggests that the broad language of that immunity statute (similar to the one involved here) should be interpreted as a use restriction, not as a “ transaction ” immunity statute *604 (227 U. S., at p. 142): “Of course there is a clear distinction between an amnesty and the constitutional protection of a party from being compelled in a criminal case to be a witness against himself. * * * But the obvious purpose of the statute is to make evidence available and compulsory that otherwise could not be got. We see no reason for supposing that the act offered a gratuity to crime. It should be construed, so far as its words fairly allow the construction, as coterminous with what otherwise would have been the privilege of the person concerned.”
One thing is certain. The rationale of this opinion rests on the view that the Fifth Amendment only requires an “ exchange ”, not an “immunity bath”. (See Comment, 31 Brooklyn L. Rev. 157.)
A review of the history of section 2447 of the former Penal Law indicates that the broad immunity language was not a result of a policy choice, but a view that the Constitution required it. (See 1942 Report of N. Y. Law Rev. Comm., N. Y. Legis. Doc., 1942, No. 65 [I], pp. 50-54, supra.) There is no evidence that the Legislature felt a “transaction” immunity was a necessary aid for criminal law enforcement. In effect, a District Attorney has always had the ability to grant an absolute immunity by a decision not to prosecute for any crime where he finds it necessary to obtain the willing co-operation of a witness. But this is a conscious decision made in each instance in light of the particular factual circumstances. The “ transaction ” immunity, however, permits a witness to obtain by a mistake a complete pardon for all crimes although, as here, there is in the People’s possession sufficient untainted evidence to make a complete case against the witness.
Following Justice Holmes’ approach in the Heike case (supra), we conclude that the Legislature, in passing section 2447, did not intend it was to be an amnesty statute, but desired to afford witnesses only that immunity demanded by the constitutional privilege. Specifically, section 2447 of the former Penal Law (see Code .Crina. Pro. §§ 619-c, 619-d, 619-e) only bars the use of the witness’ testimony and any evidence derived therefrom.
There is no doubt that the police officer’s testimony here was based on his personal knowledge as the recipient of the bribe offer and that the Grand Jury’s indictment was completely based on that testimony. Nothing appellants said indicated that *605 a bribery attempt had occurred. Whatever evidence might have been revealed by the appellants’ testimony was wholly insubstantial. Therefore, even if it be assumed that appellants ’ testimony was related to the bribery, the indictment was not the product of that testimony. Consequently, appellants’ Fifth Amendment rights were in no way violated by this indictment.
One of the appellants, Piccirillo, also argues that he was the “ target ” of the inquiry here and therefore the indictment must be dismissed, citing People v. Steuding (6 N Y 2d 214). We do not find it necessary to determine whether appellants were or were not the ‘£ targets ’ ’ of the inquiry here for, in our view, it is immaterial (People v. Tomasello, 21 N Y 2d 143).
Section 2447 of the former Penal Law was passed to achieve the sound purpose of preventing ££ immunity baths ” which resulted because witnesses were not required to assert their privilege (Third Report, May 4, 1953 of N. Y. State Crime Comm., N. Y. Legis. Doc., 1953, No. 68; 1943 Report of N. Y. Law Rev. Comm., N. Y. Legis. Doc., 1943, No. 65 [B], pp. 47-49). As Judge Bbeitel stated in People v. De Feo (284 App. Div., supra, p. 629): “It is this automatic, and what occasionally might be accidental or misguided conferring of immunity, that the new statute is designed to avoid.”
Most witnesses who are subpoenaed before a Q-rand Jury are informed of or, at least, are aware of their privilege against self incrimination. Most also have had the opportunity to consult with counsel and are more conversant about their legal position than is the “ target ” of a police investigation who is picked up on the street, taken to the police station, given a perhaps perfunctory recitation of his Miranda rights and yet is bound by his incriminatory admissions if he then chooses to speak. There is no reason why a witness, even if he is a “ target”, once informed of his rights, and given an opportunity to consult counsel (People v. Ianniello, 21 N Y 2d 418, supra), should not be required to assert his privilege if he wishes to obtain an immunity. If he does not, his testimony should be usable against him.
Here, however, although Piccirillo did not assert his privilege, he was granted immunity before he could. The precipitous action of the Q-rand Jury cmld not operate to deny Piccirillo complete protection from any use of Ms testimony against him. *606 His testimony could not furnish the basis for a finding of an indictment, and the record demonstrates that it did not.* Nevertheless, we see no justification for going any further and require the dismissal of the indictment simply because Piccirillo may be deemed to have been a target. We, therefore, hold that People v. Steuding (supra) should not be interpreted to require a dismissal of the indictment here.
Accordingly, the judgments of conviction should be affirmed.

 Since Piccirillo’s answers did not form the basis of the present indictment, his claim that his constitutional right to counsel was violated because he was not permitted to confer with his attorney is without merit. No prejudice did or could result for the attorney could have done nothing more for Piccirillo than to assure that he was given the immunity which in fact he did receive. Piccirillo’s situation is to be distinguished from that of a witness who, denied permission to confer with his counsel, refuses to answer and is held in contempt. Such a witness might properly claim that, had he been given an opportunity to obtain advice from his lawyer, he would undoubtedly have testified, and thereby been spared a prosecution on a contempt charge.