**UNITED STATES of America ex rel.
Gerardo CATENA, Appellant,**

v.

**Albert ELIAS, Superintendent of Youth
Reception and Correction Center at
Yardville, N. J.**

**No. 18855.**

United States Court of Appeals,
Third Circuit.

Argued Oct. 22, 1970.

Reargued May 11, 1971.

Decided Sept. 2, 1971.

Stay Granted Oct. 12, 1971.
See 92 S.Ct. 111.

Robert L. Weinberg, Williams & Connolly, Washington, D. C., Beckerman, Franzblau & Cohen, Newark, N. J., for relator-appellant; S. M. Chris Franzblau, Newark, N. J., Osmond K. Fraenkel, New York City, Edward Bennett Williams, Washington, D. C., of counsel.

George P. Doyle, Trenton, N. J., for appellee, State Commission of Investigation, Trenton, N. J., Wilbur H. Mathesius, Trenton, N. J., of counsel.

Argued Oct. 22, 1970

Before McLAUGHLIN, FREEDMAN and VAN DUSEN, Circuit Judges.

Reargued May 11, 1971

Before HASTIE, Chief Judge, and McLAUGHLIN, SEITZ, VAN DUSEN, ALDISERT, ADAMS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

This appeal presents the question whether the Fifth Amendment's prohibition of compelled self-incrimination precludes a state from requiring a witness to testify before one of its investigating agencies after, pursuant to a statute of that state, he has been granted immunity from any use of that testimony or any evidence derived from it against him in any criminal proceeding.

Appellant Catena was subpoenaed to appear before the New Jersey State Commission of Investigation in the course of an investigation into organized crime in that state. He refused to answer most of the questions put to him, pleading his Fifth Amendment privilege against self-incrimination. Then pursuant to N.J.Stat.Ann. § 52:9M-17 (1970), he was granted immunity "from having * * * responsive answer[s] given by him or * * * responsive evidence produced by him, or evidence derived therefrom used to expose him to criminal prosecution * * *." He nevertheless continued to refuse to answer the propounded questions. Following a hearing, the Superior Court of New Jersey found him in contempt and remanded him into custody until such time as he should answer the questions. Thereafter, the United States District Court for the District of New Jersey denied his petition for habeas corpus. This appeal followed.

It is conceded that the New Jersey statute does not preclude the prosecution of the appellant for any transaction concerning which he shall testify. That statute protects him only from the use against him of his testimony and any evidence to which it may lead. In our view the failure of the New Jersey statute to grant what has come to be called "transactional" immunity from prosecution makes it an inadequate basis for compelling an unwilling witness to incriminate himself.

As early as 1892, the Supreme Court fully considered and elaborately discussed this issue. Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110. After reviewing earlier state cases, some requiring transactional immunity and

others holding that less comprehensive immunity satisfied the Fifth Amendment, the opinion of the court continued as follows:

" * * * In view of the constitutional provision, a statutory enactment, to be valid, must afford absolute immunity against future prosecution for the offence to which the question relates." 142 U.S. at 586, 12 S.Ct. at 206.

The Court used this explicit language in deciding that an immunity statute which arguably protected a witness only against the subsequent introduction of his testimony in evidence against him was constitutionally inadequate. The Court could have adopted this restrictive interpretation and confined itself to a narrow ruling that the statute was inadequate because it did not protect the witness from using the "fruits" of his testimony against him. The Court was presented with an argument that the questioned statute prohibited any later proof of facts elicited during the course of compelled testimony, even if the proof made no use of the compelled testimony. 142 U.S. at 558–559, 12 S.Ct. 195. Supplemental Brief of Appellee at 16–18. But the Court neither adopted a broad interpretation of the statute nor stated whether such a statute would suffice. Instead, it elected to rule comprehensively that, beyond leaving the witness vulnerable to hurtful use of his testimony, the statute was inadequate in that the witness still might be prosecuted for some wrongdoing about which he had testified. Thus, though a narrower ruling might have been made, the Court used this case as a vehicle for deciding that nothing less than full transactional immunity from prosecution would suffice. That decision cannot properly be disregarded as inconsequential dictum, though that seems to be the view of the present appellee.

Four years after *Counselman*, the Court considered and sanctioned a new statute that required testimony under protection of a grant of full transactional immunity from prosecution. Brown v. Walker, 1896, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819. The *Brown* decision contains no implication that anything less than full transactional immunity would have sufficed. Indeed, the majority opinion quoted with approval the language of *Counselman* that the witness must be afforded "absolute immunity against future prosecutions for the offense to which the question relates," as well as immunity from hurtful use of his testimony. And four dissenting Justices took the position that not even a transactional immunity statute can empower the state to compel an unwilling witness to incriminate himself. 161 U.S. at 610, 628, 16 S.Ct. 644.

Over the years since the *Counselman* and *Brown* decisions, Justice after Justice has restated the concept that transactional immunity from prosecution is the safeguard that is coextensive with the guarantee of the Fifth Amendment. For example, Mr. Justice Frankfurter, dissenting on another issue, pointed out that the "prosecutor's insistence upon disclosure which, but for immunity from prosecution, could be withheld is that for which alone the immunity is given." United States v. Monia, 1943, 317 U.S. 424, 447, 63 S.Ct. 409, 419, 87 L.Ed. 376, Mr. Justice Stewart has observed that "[f]or more than half a century it has been settled that this [transactional immunity] statute confers immunity from prosecution coextensive with the constitutional privilege against self-incrimination * * *." Brown v. United States, 1959, 359 U.S. 41, 45–46, 79 S.Ct. 539, 543–545, 3 L.Ed.2d 609. To the same effect, see the observation of Mr. Justice Butler in United States v. Murdock, 1931, 284 U.S. 141, 149, 52 S.Ct. 63, 76 L.Ed. 210.

Most recently, in Picirillo v. New York, 1971, 400 U.S. 548, 91 S.Ct. 520, 27 L.Ed. 2d 596, Messrs. Justices Douglas, Brennan and Marshall explicitly, and Mr.

Justice Black inferentially,[1] indicated that in their judgment a state must grant transactional immunity to a witness if, consistent with the privilege against self-incrimination, it is to be able, under pain of criminal contempt, to compel him to testify before a grand jury concerning any suspected wrongdoing. "Mere use immunity, which protects the individual only against the actual use of his compelled testimony and its fruits, satisfies neither the language of the Constitution itself nor the values, purposes, and policies that the privilege was historically designed to serve and that it must serve in a free country." 400 U.S. at 563, 91 S.Ct. at 528 (Brennan, J.). The other five Justices decided the case on another ground and avoided any indication of their views on this constitutional question.

The foregoing items from the record of what the Supreme Court has done and various Justices have said over almost eighty years seem to warrant the conclusion that it has become authoritative constitutional doctrine that no less than a grant of full transactional immunity can justify compelling a witness who has asserted his Fifth Amendment privilege to testify about suspected criminal wrongdoing.

However, the appellee asks that we reject the teaching of this line of cases because of implications said to inhere in Murphy v. Waterfront Commission, 1964, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678. The appellant there was a recalcitrant witness who had refused to testify in a New Jersey state inquiry despite a grant of full transactional immunity. His contention was that he was inadequately safeguarded and could not be required to testify because the New Jersey immunity statute could not protect him from prosecution or from incriminating use of his testimony by federal authorities. The Supreme Court ruled

(1) that once New Jersey had granted immunity the United States might not use the compelled testimony or its fruits against the witness, but (2) that the United States still could prosecute him for a federal crime related to the transaction concerning which New Jersey had compelled him to testify under a grant of transactional immunity. The Court then concluded that New Jersey might require the witness to testify, even though he was guaranteed as against another sovereign no more than protection against incriminating use of what New Jersey had compelled him to say.

The appellee now argues that because *Murphy* establishes that the Fifth Amendment requires of a second sovereign that it accord a person no more than use immunity for testimony originally compelled by another sovereign, no more is now required of the immunity granting sovereign than that it confer use immunity in the first place. To us this is a non-sequitur.

■ It has long been recognized that it is a close question whether a government should be able to avoid the constitutional prohibition of compelled self-incrimination by any undertaking to immunize the coerced witness. Brown v. Walker, 1896, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819. Mindful of this, courts have reluctantly sanctioned the immunity device, but in so doing have minimized the erosion of Fifth Amendment protection by insisting that the coercing state protect the witness against the possibility of consequent harm as completely as it can.

Full transactional immunity from prosecution provides that maximum protection. Less protection is afforded by immunity from use of the coerced testimony and its fruits. For if the witness is prosecuted after a grant of use immunity, he is confronted with serious problems of proof that are inherent in

---

1. Messrs. Justices Black and Douglas had made clear in an earlier case that, like the dissenters in *Brown*, they could not accept any immunity statute as a valid device for compelling testimony. *See* Ullman v. United States 1956, 350 U.S. 422, 440, 76 S.Ct. 497, 100 L.Ed. 511.

the need to establish whether in fact the coerced testimony in any way influenced the decision to prosecute and whether it provided any lead to other damaging evidence. The bureaucracy involved in the investigation and prosecution of crime usually consists of many persons. It will often be difficult, sometimes impossible, to determine satisfactorily whether anyone used the coerced testimony, or how, or with what consequence. Recollection of details of the investigative process and of administrative decision-making that preceded indictment or trial can become unintentionally, occasionally conveniently, vague. Thus, the only way to make sure that compelled incriminating testimony of a witness plays no part in his subsequent prosecution by the sovereign that made him testify is to prohibit the coercing state from prosecuting him.

■ On the other hand, additional serious considerations of federalism arise when and to the extent that immunity granted a witness by one state impinges upon the independent power of another state to prosecute him. For no state other than the grantor of immunity has had an opportunity to elect whether it will forego prosecuting the witness as a price worth paying for his testimony. And states may well differ in judgment as to the importance and desirability of prosecuting a particular participant in wrongdoing. Thus, to deprive a state of the right to prosecute a violation of its criminal law on the basis of another state's grant of immunity would be gravely in derogation of its sovereignty and obstructive of its administration of justice.

But merely to prevent a state from using the text or the fruits of coerced testimony that another state has obtained is much less intrusive and less likely to obstruct the normal administration of justice. For the same unwillingness to testify that led the first state to grant immunity would almost always make the testimony of the reluctant witness unavailable to any other government. Thus, the imposition of use immunity

upon a second state is not likely to deprive it of anything that it otherwise might have obtained by its independent inquiry. Therefore, the considerations of policy that have dictated that a grant of immunity be transactional in terms and in local effect are offset by major competing considerations when the effect of that grant elsewhere is in issue.

Analytically, the *Murphy* decision is a reaffirmation of the adequacy of transactional immunity as recognized by *Counselman* and *Brown*, coupled with a supplementary ruling that another sovereign must respect so much, but only so much, of that grant as prohibits the use of the testimony or its fruits in a prosecution under its law. *Murphy* does not imply that the first state may grant less than transactional immunity as to any violation of its criminal laws. Until *Murphy* was decided, even if the United States or a state had required a witness to incriminate himself in exchange for a grant of immunity from prosecution under its law, a second sovereign was held to be free totally to disregard the grant of immunity. United States v. Murdock, 1931, 284 U.S. 141, 52 S.Ct. 63, 72 L.Ed. 210; Feldman v. United States, 1944, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408. Thus, *Murphy* broadened the effect of a state's grant of transactional immunity and for the first time imposed use immunity as to such testimony upon other non-consenting jurisdictions.

The only support for appellee's position that we find in *Murphy* is an observation, collateral to the matter under discussion, in a concurring opinion of Mr. Justice White, with whom Mr. Justice Stewart joined, that "[i]n my view it is possible for a federal prosecution to be based on untainted evidence after a grant of federal immunity in exchange for testimony in a federal criminal investigation." 378 U.S. at 106, 84 S.Ct. at 1618. However, it merits mention here that in a subsequent case, Stevens v. Marks, 1966, 383 U.S. 234, 249, 86 S. Ct. 788, 15 L.Ed.2d 724, Mr. Justice Harlan, with whom Mr. Justice Stewart joined, suggested that in a proper case

*it might be appropriate to reconsider the reach of Counselman.* These indications that three Justices are willing to reexamine the rationale of *Counselman* and *Brown* do not make it proper for an inferior court to reject doctrine so long and repeatedly declared and applied by the Supreme Court. *Accord,* Matter of Korman, 7th Cir., 1971, 449 F.2d 32: In re Kinoy, S.D.N.Y.1971, 326 F.Supp. 407; contra, Stewart v. United States, 9th Cir., 1971, 440 F.2d 954, cert. granted, sub nom. Kastigar v. United States, 402 U.S. 971, 91 S.Ct. 1668, 29 L.Ed.2d 135, *cf.* Uniformed Sanitation Men Ass'n, Inc. v. Commissioner, 2d Cir. 1970, 426 F.2d 619, 622–624.

For these reasons and the additional reasons stated in the concurring opinion of Chief Judge Seitz we hold that the New Jersey immunity statute is not comprehensive enough to justify the use of the coercive sanction of contempt to compel appellant to testify after he had claimed his constitutional privilege against self-incrimination. It follows that he is entitled to relief by way of habeas corpus.

The judgment denying habeas corpus will be reversed. And since it appears that the appellant has been deprived of his liberty for more than a year because of his lawful refusal to testify, the mandate of this court shall issue forthwith.

SEITZ, Chief Judge (concurring).

The ultimate issue here, of course, is whether use immunity is compatible with Fifth Amendment rights. The practical importance of the answer is that it determines whether criminal prosecution is ever consistent with a grant of immunity.

Use immunity clearly offends the Fifth Amendment if, in a later criminal prosecution, a defendant granted such immunity is not in the same position as though he had not testified. In other words, the immunity granted must leave the substance of the Fifth Amendment right undiluted. There has been a natural tendency to discuss the issue in the context of the prosecutor's case, i. e., whether the prosecution's evidence can be traced to the testimony given by the defendant under a grant of immunity. But what about the effect of such disclosures on the defendant's defense to the criminal charges?

In a criminal case, one of the most important decisions a defendant must make is whether to testify. If an individual, after being granted use immunity, is subsequently prosecuted for the same or a related transaction and elects to testify at trial in his own behalf, he must of course subject himself to cross-examination. The prosecutor is obviously in a position to tailor his questions, consciously or otherwise, on the basis of his knowledge of the defendant's prior testimony and can do so without any overt reference to the testimony given under immunity. In these circumstances, could defense counsel effectively object on the ground that the immunity grant was thereby violated? I think not. Indeed, how could a trial judge do other than accept the prosecutor's representation, which might well be in good faith, that the questions were not inspired by the testimony given by the defendant under immunity? Furthermore, this same possibility may adversely influence a defendant to forego entirely his right to testify in his own behalf even though he is advised that his prior disclosures cannot be used against him.

Based on the important and largely subjective factors mentioned above, I cannot say with reasonable assurance that use immunity places an individual in substantially the same position as though he had not previously testified. I believe the Fifth Amendment dictates that the doubt be resolved in favor of the defendant and that transactional immunity must be considered the minimum requirement consistent with the Constitution.

I concur in the conclusion of the Court that the judgment of the District Court should be reversed.

ADAMS, Circuit Judge (concurring).

Were we totally free to consider the Fifth Amendment in its literal form as it relates to this case, the view expressed by Judge Van Dusen would appear to be the appropriate one. However, we are constrained in interpreting the Fifth Amendment by the pronouncements of the Supreme Court in the various cases cited in the majority opinion. Therefore, I reluctantly concur in the result reached by the majority opinion.

VAN DUSEN, Circuit Judge (dissenting).

I respectfully dissent because I believe that the immunity granted by N.J.Stat. Ann. § 52:9M-17 (1970), as construed and applied by the New Jersey authorities does not violate the provision that "no person * * * shall be compelled in any criminal case to be a witness against himself" in the Fifth Amendment to the United States Constitution. Two basic principles of the federal judiciary form the background of decision in a case such as this.

First, a state statute should be construed by federal courts as constitutional if this is possible. See Rescue Army et al. v. Municipal Court of City of Los Angeles, 331 U.S. 549, 569, 67 S.Ct. 1409, 91 L.Ed. 666 (1947); cf. Stefanelli v. Minard, 342 U.S. 117, 121, 72 S.Ct. 118, 96 L.Ed. 138 (1951). As noted below at pages 9 and 10 (see notes 11 and 12), the New Jersey law enforcement authorities, as well as the New Jersey Supreme Court,[1] have given a broad construction to the immunity granted by this statute which comes very close to transactional immunity. As so construed, there is clearly "immunity from * * * use of the compelled testimony or its fruits in connection with a criminal prosecution against the person testifying,"[2] which is the requirement of the most recent opinion of the Supreme Court of the United States construing this language of the Fifth Amendment. See Gardner v. Broderick, 392 U.S. 273, 276, 88 S. Ct. 1913, 20 L.Ed.2d 1082 (1968).

Second, there is a "longstanding public policy against federal court interference with state court proceedings."[3] See Younger v. Harris, 401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971).

1. In construing N.J.Stat.Ann. 52:9M–17 (1970), the Supreme Court of New Jersey used this language in In re Zicarelli, 55 N.J. 249, 270–271, 261 A.2d 129, 140 (1970):

"Nor do we see substance to the complaint that our statute protects the witness only with respect to 'responsive' answers or evidence. The limitation is intended to prevent a witness from seeking undue protection by volunteering what the State already knows or will likely come upon without the witness's aid. The purpose is not to trap. Fairly construed, the statute protects the witness against answers and evidence he in good faith believed were demanded."
55 N.J. at 270–271, 261 A.2d at 140.

2. The complete sentence from which this quotation is taken (392 U.S. at 276, 88 S.Ct. at 1915) reads:

"Answers may be compelled regardless of the privilege if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution against the person testifying."
Decisions of the Supreme Court of the United States subsequent to the Murphy decision, discussed at page 8 below, have agreed with this view; see, for example, Marchetti v. United States, 390 U.S. 39, 58–59, 88 S.Ct. 697, 19 L.Ed.2d 889 (1967); In re Gault, 387 U.S. 1, 47–48, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966).

3. In Douglas v. City of Jeannette, 319 U.S. 157, 163, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), the Court said:

"Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved."
Catena has pending in the Supreme Court of the United States an application for review of the denial by the state appellate court of his challenge to this New Jersey statute. See Catena v. New Jersey, No. 70–84 on the 1971–72 Docket (40 L.W. 3006), motion to expedite consideration of appeal denied, 401 U.S. 952, 91 S.Ct. 966, 28 L.Ed.2d 235 (1971). The Supreme Court of the United States has noted probable jurisdiction of a 1969 appeal from the denial of a similar challenge to the same state statute. See

In Stefanelli v. Minard, 342 U.S. 117, 120–121, 72 S.Ct. 118, 96 L.Ed. 138 (1951), the Court said: " * * * the federal courts should refuse to intervene in State criminal proceedings * * *. [T]he Court's lodestar of adjudication has been that the statute 'should be construed so as to respect the proper balance between the States and the federal government in law enforcement.' [Citing case.]." The New Jersey Supreme Court has made clear that the decision of the majority will have a significant impact on the administration of the criminal law in New Jersey, where problems with organized crime are extensive. In In re Zicarelli, 55 N.J. 249, 261 A.2d 129, at 137 & 142 (1970), the court said:

" * * * a commission to inquire into performance in public office, to trace the tentacles of crime in the public and private sectors, * * * [p. 137]

* * * * * *

"Here the questions relate to an allegedly massive criminal organization, and to the witness's associations in that context. The subject matter is incontestably criminal and the interest of the State is manifest."

In Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892), the Supreme Court held that a grant of immunity is constitutionally sufficient only if it is coextensive with the scope of the privilege against self-incrimination. The majority concludes that a statute must at minimum grant immunity from prosecution for the offense to which the compelled testimony relates in order to be coextensive with the privilege against self-incrimination, relying principally upon the following language from Counselman to support this conclusion:

"In view of the constitutional provision, a statutory enactment, to be valid, must afford absolute immunity against future prosecution for the offense to which the question relates." [4]

In Counselman the Court held unconstitutional a federal immunity statute which prohibited the use of compelled testimony, but which did not prohibit the use of evidence derived from such testimony. The majority rejects the conclusions that the Court followed the traditional practice of deciding constitutional cases on the narrowest possible ground, and that, accordingly, the Court held the statute unconstitutional because of the omission of a prohibition on the use of evidence derived from compelled testimony. Instead, the majority concludes that the Court "elected to rule comprehensively" regarding the minimum re-

Zicarelli v. New Jersey State Commission of Investigation, 401 U.S. 933, 91 S.Ct. 916, 28 L.Ed.2d 213 (1971). This is the fourth case listed on the 1971–72 Docket of the Supreme Court of the United States (No. 69–4, 40 L.W. 3005). Also, the Supreme Court of the United States has denied an application for bail in Zicarelli, 401 U.S. 952, 91 S.Ct. 966, 28 L.Ed.2d 235 (1971), after its notation of probable jurisdiction. A similar application for bail pending appeal in Angelo Bruno v. New Jersey State Comm'n of Investigation was submitted to Justice Brennan on March 6, 1971, resubmitted to Chief Justice Burger, and denied by the Chief Justice on March 9, 1971.

4. 142 U.S. at 585–586, 12 S.Ct. at 206. Similar language can be found in Brown v. Walker, 161 U.S. 591, 595, 16 S.Ct. 644, 40 L.Ed. 819 (1896), and Hale v. Henkel, 201 U.S. 43, 67, 26 S.Ct. 370, 50 L.Ed. 652 (1906). Brown and Hale, however, involved statutes which provided full immunity from prosecution "for or on account of any transaction, matter or thing, concerning which he may testify or produce evidence * * *." 161 U.S. at 594, 16 S.Ct. at 645; 201 U.S. at 66, 26 S.Ct. 370. Ullman v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956), relied on by relator, also involved a statute which provided full immunity from prosecution. In Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965), some of the Counselman language relied upon by relator was again quoted. But Albertson, like Counselman, involved an immunity statute which was held unconstitutional for failure to prohibit the use of "investigatory leads" and other evidence derrived from compelled admissions. 382 U.S. at 80, 86 S.Ct. 194.

quirements of a valid immunity statute. Little more needs to be said on the issue whether the language in *Counselman* relied upon by the majority constitutes holding in the traditional sense or mere dictum,[5] for the Supreme Court will reconsider the question this Term.[6]

The controlling conceptual basis for the decision in *Counselman* is that "legislation cannot abridge a constitutional privilege, and that it cannot replace or supply [sic] one, at least unless it is so broad as to have the same extent in scope and effect." 142 U.S. at 585, 12 S.Ct. at 206.[7] In Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), the Court held that a rule prohibiting the federal government from using testimony compelled by a state from an unwilling witness through a grant of immunity, and prohibiting as well the use of evidence derived from such testimony, would leave "the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege in the absence of a state grant of immunity."[8] If a grant of immunity which prohibits the use of compelled testimony, as well as evidence derived from such testimony, places a witness "in substantially the same position as if the witness had claimed his privilege," the grant of immunity meets the requirement of *Counselman* that "legislation cannot abridge a constitutional privilege, and that it cannot replace or supply [sic] one, at least unless it is so broad as to have the same extent in scope and effect." I thus conclude that the grant of immunity provided by the New Jersey statute is coextensive with the privilege against self-incrimination and therefore constitutionally sufficient.[9]

5. See Murphy v. Waterfront Comm'n, 378 U.S. 52, 104–106, 84 S.Ct. 1594, 12 L.Ed. 2d 678 (1964) (White, J., concurring). Although the majority opinion in *Murphy* cited or discussed *Counselman* in four different places, *Counselman* was never cited for the proposition urged by the majority in this case. In Ullman v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956), the Court interpreted the decision in *Counselman* in the following manner:

"[I]n Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110, a unanimous Court had found constitutionally inadequate the predecessor to the 1893 statute because the immunity granted was incomplete, in that it merely forbade the use of the testimony given and failed to protect a witness from future prosecution based on knowledge and sources of information obtained from the compelled testimony." 350 U.S. at 436–437, 76 S.Ct. at 506.

6. See the notation of probable jurisdiction on question 2 in Zicarelli v. New Jersey State Comm'n of Investigation, 401 U.S. 933, 91 S.Ct. 916, 28 L.Ed.2d 213 (1971).

7. The Court in Murphy v. Waterfront Comm'n, 378 U.S. 52, 54, 78, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), cited this as the principle established by *Counselman*, without citing *Counselman* for the proposition urged by the majority in this case.

8. 378 U.S. at 79, 84 S.Ct. at 1610.

9. The Supreme Court of New Jersey reached the same conclusion in In re Zicarelli, 55 N.J. 249, 261 A.2d 129 (1970), prob. juris. noted sub nom. Zicarelli v. New Jersey State Comm'n of Investigation, 401 U.S. 933, 91 S.Ct. 916, 28 L.Ed.2d 213 (1971). The United States Court of Appeals for the Ninth Circuit has reached the same conclusion on the constitutional issue in Stewart v. United States, 440 F.2d 954 (9th Cir.), cert. granted sub nom. Kastigar v. United States, 402 U.S. 971, 91 S.Ct. 1668, 29 L.Ed.2d 135 (1971) (No. 1562, 1970 Term; renumbered No. 70–117, 1971 Term). The Supreme Court of California and the New York Court of Appeals have also reached the same conclusion on the constitutional issue. Byers v. Justice Court, 71 Cal.2d 1039, 80 Cal.Rptr. 553, 458 P.2d 465 (1969), vacated and remanded on other grounds sub nom. California v. Byers, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971); People v. LaBello, 24 N.Y.2d 598, 301 N.Y.S.2d 544, 249 N.E.2d 412 (1969), writ of cert. dismissed sub nom. Piccirillo v. New York, 400 U.S. 548, 91 S.Ct. 520, 27 L.Ed.2d 596 (1971). *Contra*, In re Kinoy, 326 F.Supp. 407 (S.D.N.Y.1971). *See also* Uniformed Sanitation Men Ass'n, Inc. v. Commissioner, 426 F.2d 619 (2nd Cir. 1970), petition for cert. filed, 39 U.S.L.W. 3001 (U.S., June 25, 1970) (No. 316, 1970 Term; renumbered No. 69–6, 1971 Term).

This conclusion is strengthened by the decision in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1961), decided the same day as *Murphy*, in which the Court held that the Fifth Amendment privilege against self-incrimination was made binding on the states by the Fourteenth Amendment. *Malloy* thus, it seems to me, renders insignificant the fact that *Murphy* was an inter-jurisdiction immunity decision (involving the question what effect one jurisdiction's grant of immunity has upon subsequent prosecution in another jurisdiction) while *Counselman* was an intra-jurisdiction immunity decision (involving the question what scope of immunity must be given by the jurisdiction compelling testimony), for the governing substantive constitutional guarantee in both cases was that of the Fifth Amendment. The Court in *Malloy* rejected the notion that different standards govern the scope of substantive guarantees of the Bill of Rights, depending upon whether the claimed guarantee is asserted in a state or federal proceedings. Since the lesser standard of immunity from the use of compelled testimony and evidence derived therefrom was held to satisfy the requirements of the Fifth Amendment in *Murphy*, there is little reason to believe that the stricter standard of immunity from prosecution referred to in *Counselman* is constitutionally required.[10]

The majority insists that a grant of immunity from prosecution is the minimum immunity coextensive with the scope of the privilege against self-incrimination. As noted above, the Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." The grant of immunity from prosecution to an unwilling witness affords the witness greater protection than the Fifth Amendment affords him, for the Fifth Amendment affords no one protection from criminal prosecution. On the other hand, the grant of immunity from use

10. *See* Gardner v. Broderick, *supra* at 276; Adams v. Maryland, 347 U.S. 179, 181 (1954). *But see* Piccirillo v. New York, 400 U.S. 548, 552, 91 S.Ct. 520, 27 L.Ed. 2d 596 (1971) (per curiam dismissing writ of certiorari) (Brennan, J., dissenting). The Court in *Murphy* apparently desired so to limit *Counselman*, for passages from that opinion which suggest that immunity from use is sufficient are quoted extensively, while there are no references to passages which appear to require immunity from prosecution. *See* The Supreme Court, 1963 Term, 78 Harv.L.Rev. 179, 230 (1964).

In Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), the Court analyzed the application to the states of the individual guarantees of the Bill of Rights through the Fourteenth Amendment. In holding that the scope of the privilege under the Fourteenth Amendment in state prosecutions was the same as the scope of the privilege under the Fifth Amendment in federal prosecutions, the Court noted that it had:

"rejected the notion that the Fourteenth Amendment applies to the States only a 'watered-down, subjective version of the individual guarantees of the Bill of Rights.' * * *

* * * * *

"It would be incongruous to have different standards determine the validity of a claim of privilege based on the same feared prosecution, depending on whether the claim was asserted in a state or federal court. Therefore, the same standards must determine whether an accused's silence in either a federal or state proceeding is justified." 378 U.S. at 10–11, 84 S.Ct. at 1495.

This reasoning leads to the conclusion that immunity from use of compelled testimony and evidence derived therefrom is coextensive with and sufficient to supplant the privilege against self-incrimination secured against infringement by the states by the Fourteenth Amendment, since the Court in *Murphy* held that immunity from use of compelled testimony and evidence derived therefrom was coextensive with the privilege against self-incrimination secured against infringement by the federal government by the Fifth Amendment. Otherwise stated, this reasoning leads to the conclusion that, when the same guarantee of the Bill of Rights is involved, there is no basis for a different rule for different jurisdictions regarding the extent of protection afforded by the guarantee. *But see* Piccirillo v. New York, 400 U.S. 548, 552, 91 S.Ct. 520, 27 L.Ed.2d 596 (1971) (Per curiam dismissing writ of certiorari) (Brennan, J., dissenting); In re Kinoy, 326 F.Supp. 407 (S.D.N.Y.1971).

of compelled testimony and evidence derived from such testimony affords the witness the same protection that the Fifth Amendment affords him, namely protection from being "forced to give testimony leading to the infliction of 'penalties affixed to * * * criminal acts * * *.' " Ullman v. United States, 350 U.S. 422, 438–439, 507, 76 S.Ct. 497, 100 L.Ed. 511 (1956). If the state may not use compelled testimony and evidence derived from such testimony, that testimony cannot lead to the infliction of criminal penalties upon the witness.

Of course immunity from the use of compelled testimony and evidence derived therefrom affords less protection to an unwilling witness than immunity from prosecution for the offense to which the compelled testimony relates. While I do not believe that the latter immunity is constitutionally required, I do agree that courts should be diligent to protect the rights of persons from whom testimony has been compelled pursuant to a grant of immunity. I believe, however, that this can be accomplished through a broad definition of the concept of "evidence derived from compelled testimony," [11] as well as by placing a heavy burden of proving that there was an independent, legitimate source for any disputed evidence on the prosecutorial authorities.[12] Courts have dealt with the "fruit of the poisonous tree" concept for many years, and I see no reason why that experience will not suffice to protect the rights of persons from whom testimony has been compelled pursuant to a grant of immunity.

I would affirm the district court judgment or, at the least, stay the decision in this case pending action by the Supreme Court of the United States in Zicarelli v. New Jersey State Comm'n of Investigation, No. 69–4, 1971–72, Docket of the Supreme Court of the United States, supra at n. 3.

McLAUGHLIN, J., joins in this dissenting opinion.

11. Viewed against the background of constitutional decisions in the immunity cases, as well as in the search and seizure and wiretap cases, I believe that "evidence derived from compelled testimony" must be construed to prohibit the use of "investigatory leads" obtained from compelled testimony, as well as the results of those leads. Cf., e. g., Albertson v. Subversive Activities Control Board, 382 U.S. 70, 80, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965); Murphy v. Waterfront Comm'n, 378 U.S. 52, 103, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) (White, J., concurring); Wong Sun v. United States, 371 U.S. 471, 487–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Counsel for the New Jersey State Commission of Investigation took this view of the New Jersey statute at oral argument before the original panel, where he took the position that "evidence derived" from compelled testimony comprehended all evidence obtained by virtue of focusing investigation on a witness as a result of his compelled disclosures. He further stated that "once you compel [a witness] to give an answer anything that flows even remotely from it must be protected."

It is noted that the grant of immunity afforded by this statute so construed is as broad in scope as the "testimony and its fruits" requirement of the Fifth and Fourteenth Amendments, and as the grant of immunity afforded by the Organized Crime Control Act of 1970, Pub.L.No. 91–452, § 201(a) (Oct. 15, 1970), 39 U.S.L.W. 33, 34 (approved by the Judicial Conference of the United States at its March 16–17, 1970, meeting, Report of the Proceedings of the Judicial Conference of the United States 18 [March 16–17, 1970]). See Murphy v. Waterfront Comm'n, 378 U.S. 52, 79, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

12. Counsel for the New Jersey State Commission of Investigation took the position in his brief and at oral argument before the original panel that once a criminal defendant demonstrates that he has testified under a grant of immunity from the Commission to matters related to his subsequent criminal prosecution, the New Jersey prosecutorial authorities would have the burden of showing that their evidence was not "evidence derived" from the compelled testimony, and that they had an independent, legitimate source for the disputed evidence. See Brief for Appellee at 8–10; cf. Murphy v. Waterfront Comm'n, 378 U.S. 52, 79 n. 18, 103, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).