OPINION OF THE COURT
Kathryn McDonald, J.
The court is here confronted with a novel immunity issue, viz., whether a dispositional order may be entered with respect to a juvenile who had admitted committing an act of delinquency in an article 7 delinquency proceeding where that juvenile, subsequent to the admission but before the dispositional hearing, has been compelled to testify before a Grand Jury concerning the acts he has admitted committing.
Upon a petition filed pursuant to article 7 of the Family Court Act, the respondent appeared before this court on May 5, 1978 at which time he admitted committing acts which if committed by an adult would constitute burglary in the second degree (Penal Law, § 140.25). After ascertaining that it was made voluntarily and with full knowledge of the possible consequences, the court accepted the respondent’s admission and adjourned the matter to June 23, 1978 for a dispositional hearing.
Subsequently, respondent was subpoenaed before a Grand Jury by the District Attorney’s office to give testimony relevant to the possible indictment of an adult defendant. On June 1, 1978, respondent appeared as directed and gave responsive testimony to the Grand Jury concerning the alleged incident upon which the instant juvenile delinquency petition is predicated. Respondent’s Law Guardian now moves this court for dismissal of the instant petition on the grounds that his young client now possesses full transactional immunity pursuant to CPL 190.40 and is thereby immunized from any dispositional order. The prosecuting Assistant District Attorney does not oppose this motion.
CPL 190.40 confers automatic immunity upon any witness who is compelled to give testimony before a Grand Jury. This immunity attaches with respect to the subject matter of any responsive testimony to Grand Jury inquiries, unless the immunity has been waived by the witness, in writing. (CPL 190.40, 190.45.) Respondent herein executed no such written waiver. The immunity conferred by CPL 190.40 is defined by *175 CPL 50.10 to be of the broad transactional type which protects a co-operative witness against being "convicted of any offense or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he gave evidence” (emphasis added). It is clear that "[t]he penalties and forfeitures encompassed by this immunity are those imposed or sought to be imposed as punishment upon conviction for a criminal offense committed in violation of the Penal Law or other statute of the State” (Matter of Anonymous Attorneys, 41 NY2d 506, 508).
 Analytically, the initial question presented is whether CPL 50.10 and 190.40 must be construed to bar sentencing when an individual adult defendant is compelled to give Grand Jury testimony during the interim period between his conviction or entry of a guilty plea and the actual imposition of sentence where the subject matter of his testimony touches upon that of his conviction or plea. If so, it must then be determined whether the same result must necessarily be obtained with respect to a juvenile respondent in an article 7 proceeding under the Family Court Act.
CONSTRUING THE IMMUNITY STATUTE
The broad transactional form of immunity embodied in CPL 50.10 has a long history in this State. The predecessor statutes to the present CPL immunity provisions, section 619-c of the Code of Criminal Procedure (enacted 1967) and section 2447 of the Penal Law (enacted 1953), both defined immunity in precisely the same language, establishing a broad transactional strain of immunity which barred not only prosecution but also the imposition of "any penalty or forfeiture”. Prior to 1953, New York immunity legislation consisted of dozens of individual "immunity statutes”, each of which provided that in a specified kind of proceeding or investigation any subpoenaed witness could be compelled to give testimony, regardless of any possibility of self incrimination, but that anyone so compelled would receive in return complete transactional immunity. For example, section 79 of the former Penal Law (enacted in 1881) provided that any person could be compelled to testify in a criminal proceeding relating to bribery, but that "the testimony so given shall not be used in any prosecution or proceeding * * * against the person so testifying” and that the "person * * * testifying to the giving of a bribe which has been accepted, shall not thereafter be liable to indictment, *176 prosecution or punishment for that bribery” (emphasis added). Thus, the present disjunctive formulation of CPL 50.10, establishing an exemption from any imposition of punishment in addition to an exemption from prosecution, is a statutory formulation of long standing and cannot be viewed as a mere slip of the legislative pen.
This court must give effect to the plain meaning of longstanding statutory language unless the result thereby achieved would be manifestly contrary to the purpose and legislative intent which underlie the statute. (Matter of Carr v New York State Bd. of Elections, 40 NY2d 556.) Accordingly, a brief examination into the history and purpose of statutorily conferred immunity is required.
STATUTORY IMMUNITY AND THE PRIVILEGE AGAINST SELF INCRIMINATION
The immunity statute is a law enforcement tool long rooted in American jurisprudence. It represents an accomodation between the government’s need, in certain circumstances to compel testimony from knowledgeable citizens, and a citizen’s constitutionally based privilege against self incrimination under the Fifth Amendment of the Federal Constitution and section 6 of Article I of the New York State Constitution.
It is well established that complusion of potentially self incriminating testimony is permissible only where a witness is provided immunity protection which is coextensive with his constitutional privilege against self incrimination. The United States Supreme Court long held that such coextensive protection required a statute which conferred full transactional immunity, that is, "absolute immunity against future prosecutions for the offence to which the question relates.” (Counselman v Hitchcock, 142 US 547, 586.) However, in 1972, the court overruled its Counselman decision by upholding the constitutionality of a Federal statute which permitted subsequent prosecutions of Grand Jury witnesses, precluding only the prosecutor’s use of either compelled testimony or any information derived therefrom (known as "use-derivative use” immunity). (Kastigar v United States, 406 US 441, reh den 408 US 931.) Similarly, it has been held that "use-derivative use” immunity provides constitutionally adequate coextensive protection for purposes of section 6 of article I of the New *177 York State Constitution. (United States ex rel. Gasparino v Butler, 398 F Supp 127; People v La Bello, 24 NY2d 598.)[1]
In the face of these judicial holdings, the Legislature’s failure to amend or curtail the present statutory provision for full transactional immunity under CPL 50.10 must be interpreted as an intention on the part of that branch of government to ensure a maximum, rather than a minimum, form of protection to witness’ constitutional privilege against self incrimination. Accordingly, if an adult defendant to a criminal proceeding retains any vestige of his constitutional privilege against self incrimination during the interim period between the entry of a guilty plea and sentencing, then a conferral of immunity even at that late stage would be consonant with the apparent intent of the Legislature.
There is ample decisional precedent concluding that an individual’s Fifth Amendment right is not destroyed upon a plea of guilty, where sentence has not yet been imposed and/ or the time for appeal has not yet expired. (See, e.g., United States v Domenech, 476 F2d 1229, cert den 414 US 840; Mills v United States, 281 F2d 736; State v Tyson, 43 NJ 411, cert den 380 US 987. See, also, Knight v Maybee, 44 Misc 2d 152.)
This conclusion has been based upon judicial reasoning that a witness, even after conviction or a plea of guilty, may further incriminate himself by statements having either an adverse effect on the disposition of any possible appeal and the severity of the sentence ultimately imposed (Mills v United States, supra) or an adverse effect on any subsequent motion to withdraw the guilty plea, which could be granted in the court’s discretion at any time prior to sentencing (United States v Domenech, supra; State v Tyson, supra). The instant court finds this analysis persuasive and controlling.
Accordingly, the present wording of CPL 50.10, which ostensibly provides an immunity shield from "penalty or forfeiture” as well as prosecution, serves to protect that flicker of Fifth Amendment privilege which survives during the intermediate period between conviction or guilty plea and sentencing (perhaps enduring, as well, until all avenues of appeal are foreclosed). Hence, it must be concluded that an adult offender so *178 situated would be immune from sentencing by operation of CPL 190.40 and 50.10.
ASSUMING, ARGUENDO, AN ABSENCE OF A PRIVILEGE AGAINST SELF INCRIMINATION
Further, it must be added that even assuming, arguendo, an absence of a privilege against self incrimination on the part of an adult criminal defendant during the interim period described, the court would still necessarily conclude that immunity barring the imposition of any sentence is conferred by operation of CPL 190.40 and 50.10. This conclusion is compelled by the automatic nature of the immunity conferral scheme in the Grand Jury setting pursuant to CPL 190.40.
In all proceedings other than a Grand Jury inquest, immunity must be invoked by a series of affirmative acts including (1) a refusal to respond to inquiry accompanied by an assertion of privilege on the part of the witness and (2) an assurance by the interrogating authority that immunity is being conferred followed by a direction that the witness respond to the questions propounded. This immunity invocation scheme emphasizes the validity of the general proposition that the existence of a Fifth Amendment right is the raison d’etre of statutorily conferred immunity. Thus, in non Grand Jury situations, if a witness does not possess a Fifth Amendment privilege against self incrimination (as, for example, where the Statute of Limitations has run or where an acquittal has been obtained and double jeopardy bars a second prosecution), the immunity provisions are not functional and do not become operative.
The automatic conferral of immunity under CPL 190.40 muddies the relationship between the grant of immunity and the constitutional right it is presumably meant to preserve, seemingly allowing for the conferral of immunity even where there is no Fifth Amendment right in existence. Indeed, the most recent amendment to 190.40 added a provision which precludes an attachment of immunity where the only evidence given by the witness consists of subpoenaed books, papers, records or other physical evidence of an enterprise, where the witness does not possess a privilege against self incrimination with respect to the production of such evidence. (See CPL 190.40, subd 1, par [c] amd [1975].) The Legislature’s specific exclusion from immunity of a particular circumstance wherein a Fifth Amendment right is absent, rather than a *179 more general exclusion extending to all circumstances where the witness does not possess such a constitutional privilege, militates against a statutory interpretation of CPL 190.40 which requires a Fifth Amendment right to be present before conferral of immunity becomes operative.[2] (Cf. Patrolmen’s Benevolent Assn. of City of N. Y. v City of New York, 41 NY2d 205.)
PRIOR CASE LAW ON POINT
The court is aware of only one prior published decision which addressed the instant issue in the context of adult criminal proceedings. (See People v Fine, 173 Misc 1010.) In Fine, a defendant had been tried and convicted of illegal activities regarding slot machines. During the interim period between his conviction by the jury and sentencing by the Judge, he was subpoenaed before, and gave testimony to, a Grand Jury. The defendant thereafter contended that his compelled testimony before the Grand Jury prior to sentencing rendered him immune from punishment. The relevant immunity provision of section 996 of the Penal Law, provided that an individual might be compelled to testify regarding a violation of the gambling laws, but that "no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify”.
The Fine court, concluding (p 1011) that the statute was " 'designed to give an immunity as broad as the constitutional privilege, and no broader’ ”, refused to construe the statute to *180 mean that the defendant could escape sentencing once he had been convicted. The court reasoned that to so construe the statute would convert it from being an immunity statute aimed at preserving Fifth Amendment rights, to an amnesty statute without a valid purpose. The court’s rationale rested ultimately upon its belief that there was no longer a Fifth Amendment privilege in existence once the defendant was convicted and that therefore immunity, in this context, did not serve what the court took to be the intended legislative purpose, i.e., establishing that degree of minimum protection coextensive with the Fifth Amendment privilege which will justify the abrogation of that privilege in compelling self incriminating testimony. In effect, the court concluded that shielding a defendant from prosecution was a constitutionally sufficient quid pro quo for the compulsion of testimony and that therefore the statute could not have been intended to go beyond this to immunize a defendant against sentencing after conviction.
This court rejects the Fine analysis and holding on several grounds. First, it cannot be said that the legislative intent behind CPL 50.10 is solely to provide protection coextensive with the Fifth Amendment and no broader. As discussed supra, the protection presently afforded clearly exceeds the constitutionally mandated minimum. Secondly, the Fine decision completely ignored the plain wording of the statute which bars imposition of "penalty or forfeiture,” and its rationale concerning limited legislative intent flies in the face of this language. Thirdly, the court’s conclusion, underpinning the logic of its holding, that an individual’s Fifth Amendment privilege against self incrimination is extinguished upon conviction is erroneous. See United States v Domenech, 476 F2d 1229, supra; Mills v United States, 281 F2d 736, supra; State v Tyson, 43 NJ 411, cert den 380 US 987, supra; Knight v Maybee, 44 Misc 2d 152, supra.)
Thus, having determined that an adult defendant in an analogous criminal proceeding context would be immune from sentencing, the court now turns to the instant issue involving a juvenile respondent under article 7 of the Family Court Act.
IN THE INSTANT CONTEXT OF AN ARTICLE 7 PROCEEDING
In light of the recently evolved requirement that virtually the full panoply of due process rights afforded adult offenders in criminal proceedings be extended to juveniles in *181 analagous delinquency proceedings (see Matter of Gault, 387 US 1 and its progeny), logic dictates that immunity which would preclude the sentencing of an adult should also bar a dispositional order in the case of a similarly situated juvenile. (Matter of De Gaglia, 54 Misc 2d 423.) The only grounds for distinction would be based upon this court’s determination that the words "penalty or forfeiture” contained in CPL 50.10 were not intended to encompass the dispositional alternatives under article 7, which are arguably (in nondesignated felony cases) rehabilitative and remedial, rather than punitive, in nature. However, given the dispositional alternative of confinement and the loss of personal freedom which accompanies all imposed dispositional alternatives to some degree, such a distinction would constitute more sophistry than substance. Therefore, the court holds that the respondent is immunized from the entry of a dispositional order of any kind.
The final question which remains is whether this court may allow the instant petition to stand and enter an adjudication of "juvenile delinquency” notwithstanding the fact that a dispositional order of treatment, supervision or confinement has been rendered impossible. The answer appears to be that the court has no choice but to dismiss the instant petition in its entirety.
A "juvenile delinquency” petition must allege not only that a respondent less than 16 years of age has committed an act which if done by an adult would constitute a crime; but also, it must allege that "the respondent requires supervision, treatment or confinement.” (Family Ct Act, § 731, subd 1, par [c].) Not until all the mandatory allegations of the petition are established, may the court enter an order finding the respondent to be a "juvenile delinquent”. (Family Ct Act, § 752.) Accordingly, "the finding of fact as to conduct alone may not support an adjudication * * * of 'delinquency’ * * * [The] petition will be dismissed without any adjudication of 'delinquency’ * * * if the probation or psychiatric reports indicate that the [respondent] is not in need of supervision, treatment or confinement under court order.” (Matter of Ronny, 40 Misc 2d 194, 197; accord, Matter of Edwin R., 67 Misc 2d 452; Matter of Charles C., 83 Misc 2d 388.)
Hence, actual adjudication of delinquency occurs at the dispositional stage of an article 7 proceeding upon a finding that the respondent requires supervision, treatment or confinement. Here, by operation of immunity, the court is pre *182 eluded from imposing any of these dispositional alternatives. Moreover, the mere adjudication of delinquency (and the concomitant attachment of the label, "juvenile delinquent”) carries with it a stigma independent of any additional dispositional result and, itself, arguably constitutes a "penalty” from which the instant respondent is also immunized. Thus, it is apparent that the court has no option but, to dismiss the instant petition pursuant to section 751 of the Family Court Act.

. La Bello also declared that the then existing immunity statute (Code Crim Pro, § 619-c) provided only use immunity, and not the broader transactional immunity, despite statutory language to the contrary. However, La Bello was overruled on this point by Matter of Gold v Menna (25 NY2d 475) wherein the court held the immunity conferred by statute to be transactional in nature.

. This is not to suggest that CPL 190.40 should be viewed as an amnesty statute which would provide, in effect, a pardon to any individual currently serving a sentence after conviction, if that individual were compelled to give testimony with regard to the crime of which he was convicted. There is nothing to suggest that CPL 190.40 has retrospective effect; its effect is strictly prospective. (Cf. People ex rel. Hunt v Lane, 196 NY 520.)
In Hunt, the court was concerned with a statute dealing with "crimes against the elective franchise” which provided that any offender might be compelled to give testimony against others, but that he would not then be subject to indictment, prosecution or punishment for the crime to which his testimony related. An individual was convicted and sentenced for criminally aiding the perpetration of voting illegalities. Thereafter, he was subpoenaed and compelled to give testimony to a Magistrate concerning the involvement of others in his crime. Subsequently, his counsel brought a writ of habeaus corpus contending that under the statute the witness had rid himself of any punishment by giving testimony under compulsion. An order dismissing the writ was affirmed, the court interpreting the word "punishment” to mean the act of sentencing rather than the endurance of the sentence.